UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04 12531 MEL

ALEXEI KOUVCHINOV, )
    Plaintiff )
 )
v. )
 )
PARAMETRIC TECHNOLOGY )  MAGISTRATE JUDGE Mbb
CORPORATION, CDI CORPORATION, )
LISA WALES, and CONNECTICUT )
GENERAL LIFE INSURANCE CO. )

RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED Yes
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK _____
DATE 12/2/04

### COMPLAINT AND JURY DEMAND

### Introduction

1.    In this action, plaintiff Alexei Kouvchinov brings claims for disability discrimination under both the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the Massachusetts Fair Employment Practices Act, Mass. Gen. Laws ch. 151B; for discrimination and other violations under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*; for invasion of privacy in violation of Mass. Gen. Laws ch. 214, § 1B; and for other causes of action under common law.

### Jurisdiction

2.    This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), 29 U.S.C § 1132(a)(1)(B), and 42 U.S.C. § 12117(a).

3.    This court has jurisdiction over the state law claims as a matter of pendant jurisdiction.

### Parties

4.    Plaintiff Alexei Kouvchinov ("Kouvchinov") is an adult resident of Massachusetts.

5.    Defendant Parametric Technology Corporation ("PTC") is a Massachusetts corporation with a principal place of business in Needham, Massachusetts.

6.    Defendant CDI Corporation ("CDI") is a Pennsylvania corporation doing business in Massachusetts.

7.  Defendant Lisa Wales is, on information and belief, an adult resident of Massachusetts.

8.  Defendant Connecticut General Life Insurance Company ("CIGNA") is, on information and belief, a Connecticut corporation, and is a subsidiary of CIGNA Corporation.

## Facts

9.  Kouvchinov began working for PTC in 1994 as a software engineer.

10. At all relevant times, Kouvchinov has suffered from depression, a condition that has substantially limited one or more of his major life activities. In addition, at relevant times, Kouvchinov had a record of disability, and on information and belief PTC, CDI, and Wales perceived him as disabled.

11. On or about September 10, 2001, PTC notified Kouvchinov that pursuant to a corporate restructuring his employment would be terminated effective September 24, 2001.

12. On or about September 17, 2001, Kouvchinov made a claim for disability benefits through a short term disability plan ("Plan") sponsored by PTC and administered by CIGNA. In his claim, he indicated that he expected to return to work in November 2001. Wales, who worked in human resources at PTC, saw Kouvchinov's claim when he filed it, and she questioned the legitimacy of his claim.

13. CIGNA allowed Kouvchinov's claim based on its determination that he was disabled under the terms of the Plan, and CIGNA began to pay him benefits. CIGNA paid weekly benefits in advance, and on November 23, 2001, it issued a benefits check for the period November 24, 2001 through November 30, 2001.

14. After Kouvchinov received treatment and his condition improved, he sought to return to work. On or about November 29, 2001, he executed a purported "employment agreement" with CDI, with the understanding that he would be paid by CDI to work at PTC, beginning on or about December 3, 2001.

15. Promptly after executing the agreement with CDI, Kouvchinov called CIGNA to provide notice of his planned return to work. CIGNA did not issue a check on November 30, 2001, which was the next scheduled payment date, so Kouvchinov concluded that CIGNA had terminated his benefits.

16. Kouvchinov began working at PTC on December 4, 2001.

17. Wales saw Kouvchinov at PTC on December 4, 2001. She never asked him if he was still receiving disability benefits. Instead, and without his knowledge, she

2

and PTC falsely concluded that he was engaged in unethical conduct by working while continuing to seek and collect disability benefits.

18. PTC falsely reported to CDI that Kouvchinov was engaged in unethical conduct by working while continuing to seek and collect disability benefits.

19. On or about December 7, 2001, Kouvchinov's employment was terminated. He had no prior warning of his termination or that he was suspected of engaging in unethical conduct.

20. After learning of the basis for his termination, Kouvchinov attempted to explain that he had not been receiving disability benefits while working, but PTC and CDI refused to change their decisions.

### Causes of Action

### COUNT I: DISABILITY DISCRIMINATION (PTC and CDI)
### Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq.
### Mass. Gen. Laws ch. 151B

21. Kouvchinov restates the above paragraphs.

22. At all relevant times, Kouvchinov was a qualified individual with a disability or handicap.

23. CDI was Kouvchinov's employer. In the alternative, PTC was Kouvchinov's employer. In the alternative, CDI and PTC were joint employers of Kouvchinov.

24. Kouvchinov was terminated because of his disability or handicap, because of his record of disability or handicap, or because CDI and PTC regarded him as disabled or handicapped.

25. Kouvchinov has fulfilled all the administrative prerequisites for bringing a claim under the ADA and Mass. Gen. Laws ch. 151B.

26. As a result of Kouvchinov's termination, he has suffered and continues to suffer damages, including without limitation lost pay and benefits, out-of-pocket expenses, and emotional distress.

### COUNT II: ERISA DISCRIMINATION (PTC, CDI, and Wales)
### 29 U.S.C. § 1140

27. Kouvchinov restates paragraphs 1-20.

28.     PTC, CDI, and Wales expelled, disciplined, or discriminated against Kouvchinov for exercising his right to seek benefits under the Plan, in violation of 29 U.S.C. § 1140 and the terms of the Plan.

29.     As a result, Kouvchinov suffered harm and is entitled, among other things, to damages and appropriate equitable relief.

### COUNT III: VIOLATION OF ERISA/PLAN (CIGNA)
### 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3)(B)

30.     Kouvchinov restates paragraphs 1-20.

31.     On information and belief, CIGNA violated ERISA or the Plan by, among other things, failing properly to terminate Kouvchinov's disability benefits based on his reported plan to return to work and by failing to provide accurate information to PTC regarding Kouvchinov's benefits status.

32.     As a result, Kouvchinov suffered harm and is entitled, among other things, to damages and appropriate equitable relief.

### COUNT IV: INTERFERENCE WITH ADVANTAGEOUS RELATIONS
### (PTC and Wales)

33.     Kouvchinov restates paragraphs 1-20.

34.     Kouvchinov possessed an advantageous relationship with CDI, of which PTC was aware. Through improper means or with an improper motive, PTC interfered intentionally and through actual malice with Kouvchinov's advantageous relationship, with the result that Kouvchinov lost his advantageous relationship with CDI.

35.     In the alternative, Kouvchinov possessed an advantageous relationship with PTC or CDI, of which Wales was aware. Through improper means or with an improper motive, Wales interfered intentionally and through actual malice with Kouvchinov's advantageous relationship, with the result that Kouvchinov lost his advantageous relationship with PTC or CDI.

36.     As a result, Kouvchinov has suffered and continues to suffer damages, including without limitation lost pay and benefits, out-of-pocket expenses, and emotional distress.

### COUNT V: NEGLIGENCE (PTC, CDI, and Wales)

37. Kouvchinov restates paragraphs 1-20.

38. CDI was Kouvchinov's employer. In the alternative, PTC was Kouvchinov's employer.

39. CDI, PTC, and Wales had a duty to exercise reasonable care in connection with Kouvchinov's employment.

40. CDI, PTC, and Wales breached their duty of care by conducting a negligent investigation that concluded, falsely, that Kouvchinov was continuing to seek and to collect disability benefits while working.

41. As a result, Kouvchinov has suffered and continues to suffer damages, including without limitation lost pay and benefits and out-of-pocket expenses.

### COUNT VI: DEFAMATION (PTC and Wales)

42. Kouvchinov restates paragraphs 1-20.

43. PTC falsely and recklessly reported to CDI that Kouvchinov was engaged in unethical conduct.

44. Wales falsely and recklessly reported to PTC that Kouvchinov was engaged in unethical conduct.

45. As a result of these false statements, PTC and Wales harmed Kouvchinov's reputation in a considerable and respectable segment of the community.

46. As a result, Kouvchinov has suffered and continues to suffer damages, including but not limited to lost pay and benefits, out-of-pocket expenses, harm to his reputation, and emotional distress.

### COUNT VII: INVASION OF PRIVACY (PTC)
### Mass. Gen. Laws ch. 214, § 1B

47. Kouvchinov restates paragraphs 1-20.

48. By disclosing Kouvchinov's disability information to CDI, PTC unreasonably and substantially interfered with Kouvchinov's privacy, in violation of Mass. Gen. Laws ch. 214, § 1B.

49. As a result, Kouvchinov has suffered and continues to suffer damages, including but not limited to lost pay and benefits, out-of-pocket expenses, and emotional distress.

WHEREFORE, Kouvchinov respectfully requests that this Court:

A. Award him damages, in an amount to be determined at trial;

B. Award him equitable relief, in a form to be determined at trial;

C. Award him punitive damages;

D. Award him attorneys' fees, costs, and interest; and

E. Grant such other relief as the court deems just and proper.

<u>PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE</u>

ALEXEI KOUVCHINOV
By his attorneys,

*/s/ Stephen S. Churchill*

Stephen S. Churchill (BBO# 564158)
Hale & Dorr Legal Services Center of
 Harvard Law School
122 Boylston Street
Jamaica Plain, MA  02130
(617) 390-2578