UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ALEXEI KOUVCHINOV,  )<br>　　Plaintiff  )<br>　　　　　　　　　　　　　　　　　　　)<br>v.  )<br>　　　　　　　　　　　　　　　　　　　)<br>PARAMETRIC TECHNOLOGY  )<br>CORPORATION, CDI CORPORATION,  )<br>LISA WALES, and CONNECTICUT  )<br>GENERAL LIFE INSURANCE CO.,  )<br>　　Defendants  ) | CIVIL ACTION<br>No. 04-CV-12531MEL |

**PLAINTIFF'S OPPOSITION TO DEFENDANT CONNECTICUT GENERAL
LIFE INSURANCE COMPANY'S MOTION TO DISMISS**

Plaintiff Alexei Kouvchinov opposes defendant Connecticut General Life Insurance Company's ("CGLIC") motion to dismiss. Because Kouvchinov's complaint states a claim for which relief can be granted, CGLIC's motion must be denied.

**Introductory Statement**

The claim at issue – Count III – is the sole claim against CGLIC and is brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. In relevant part, the complaint alleges that CGLIC breached its fiduciary duty to Kouvchinov by misrepresenting to Kouvchinov's employer, defendant Parametric Technology Corporation ("PTC"), the status of his claim for short term disability ("STD") benefits. Specifically, after Kouvchinov notified CGLIC that he was returning to work, CGLIC allegedly represented to PTC that Kouvchinov was still collecting STD benefits. PTC, allegedly under the false belief that Kouvchinov was attempting to have it both ways – i.e., to both work and collect disability benefits – then terminated him.

Among other alternative theories, the complaint alleges that CGLIC's improper actions caused PTC to terminate Kouvchinov. Because Kouvchinov's allegations against CGLIC set forth a cause of action under ERISA, CGLIC's motion to dismiss must be denied.

## Relevant Facts[1]

Kouvchinov began working for PTC in 1994 as a software engineer. (Complaint ¶ 9). At all relevant times, he has suffered from depression. (Complaint ¶ 10). On or about September 10, 2001, PTC notified Kouvchinov that pursuant to a corporate restructuring his employment would be terminated effective September 24, 2001. (Complaint ¶ 11).

On or about September 17, 2001, Kouvchinov made a claim for disability benefits through an STD plan ("Plan") sponsored by PTC and administered by CGLIC. (Complaint ¶ 12). CGLIC allowed Kouvchinov's claim based on its determination that he was disabled under the terms of the Plan, and began to pay him benefits. (Complaint ¶ 13).

After Kouvchinov received treatment and his condition improved, he sought to return to work. On or about November 29, 2001, he executed a purported "employment agreement" with defendant CDI Corporation ("CDI"), with the understanding that he would be paid by CDI to work at PTC, beginning on or about December 3, 2001. (Complaint ¶ 14).[2]

Promptly after executing the agreement with CDI, Kouvchinov called CGLIC to provide notice of his planned return to work. CGLIC did not issue a check on November

---

[1] Only those facts relevant to Count III are included here.
[2] The complaint pleads in the alternative that CDI, PTC, or both were Kouvchinov's employer. (Complaint ¶ 23).

2

30, 2001, which was the next scheduled payment date, so Kouvchinov concluded that CGLIC had terminated his benefits. (Complaint ¶ 15).

Kouvchinov began working at PTC on December 4, 2001. (Complaint ¶ 16). Defendant Lisa Wales, a human resources employee at PTC, saw Kouvchinov at work on December 4, 2001. She never asked him if he was still receiving disability benefits. Instead, and without his knowledge, she and PTC falsely concluded that he was engaged in unethical conduct by working while continuing to seek and collect disability benefits. (Complaint ¶ 17).

On or about December 7, 2001, Kouvchinov's employment was terminated. He had no prior warning of his termination or that he was suspected of engaging in unethical conduct. (Complaint ¶ 19).

On information and belief, CGLIC violated ERISA or the Plan by, among other things, failing properly to terminate Kouvchinov's disability benefits based on his reported plan to return to work and by failing to provide accurate information to PTC regarding Kouvchinov's benefits status. (Complaint ¶ 31).[3]

**Argument**

**I.     CGLIC Has The Burden Of Showing That Kouvchinov Has No Hope Of Recovery.**

CGLIC's motion to dismiss can succeed "only if the plaintiff's factual averments hold out no hope of recovery on any theory adumbrated in [his] complaint." *Rodi v. Southern New England School of Law*, 389 F.3d 5, 13 (1st Cir. 2004) (citations and internal quotes omitted; brackets in original). The question at this stage, of course, is not

---

[3] These alleged facts regarding CGLIC's conduct were omitted from CGLIC's statement of "relevant factual allegations." (CGLIC Memorandum, p.2).

3

whether Kouvchinov ultimately will prevail, but whether "he is entitled to undertake discovery in furtherance of his pleaded claim." *Id.* (citation omitted).

CGLIC has the burden of proving that Kouvchinov has no hope of recovery. *International Shipping Agency, Inc. v. Union de Empleados de Muelles de Puerto Rico*, 21 F.Supp.2d 100, 103 (D.Puerto Rico 1998) (citations omitted). *See also* 5B C. Wright & A. Miller, *Federal Practice and Procedure*: Civil 3d § 1357 (2005) ("All federal courts are in agreement that the burden is on the moving party to prove that no legally cognizable claim for relief exists.").

CGLIC cannot satisfy this burden simply by asserting that Kouvchinov has not identified a specific form of equitable relief to which he is entitled (CGLIC's Memorandum, p.5), because Kouvchinov does not need to identify a specific form of equitable relief. After all, even if he had requested a specific equitable remedy, the viability of the complaint would not rise or fall on the viability of that specific relief. This follows from the principle that a complaint "should not be dismissed where, despite the plaintiff's inability to obtain the relief requested, the court can ascertain that some form of relief may be granted." *Afanador v. U.S. Postal Service*, 787 F.Supp. 261, 270 n.17 (D. Puerto Rico), *aff'd* 976 F.2d 724 (1st Cir. 1992), *citing* 5A C. Wright & A. Miller, *Federal Practice and Procedure*: Civil 2d § 1357 at 339 (1990) and *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (other citations omitted). As discussed below, determining whether some form of relief may be granted in this case will depend on a complete factual record, not on the relatively spare allegations of a complaint.

**II.     CGLIC's Alleged Conduct Constitutes A Breach Of Fiduciary Duty.**

Under ERISA, a fiduciary[4] must follow a "prudent man standard of care," described as follows:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and … with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

*Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102, 109 (1st Cir. 2002), *quoting* 29 U.S.C. § 1104(a)(1) (ellipses in original). "[N]egligence can, at least under some circumstances, rise to the level of breach of fiduciary duty" under ERISA. *Degnan v. Publicker Industries, Inc.*, 42 F.Supp.2d 113, 121 (D.Mass. 1999). Given this standard of care, determining whether there has been a breach of fiduciary duty requires a fact-intensive analysis, including case-specific inquiries about the meaning of the terms "circumstances then prevailing," "acting in like capacity," "familiar with such matters," and "an enterprise of a like character and with like aims." It takes little imagination to see how CGLIC's improper failure to terminate Kouvchinov's benefits, together with its alleged misrepresentation to PTC that Kouvchinov was still receiving STD benefits, fell short of the "care, skill, prudence, and diligence" required under the circumstances. Moreover, once the full course of CGLIC's conduct is uncovered through discovery, it remains open for Kouvchinov to prove other breaches. In short, the complaint sufficiently alleges that CGLIC breached its fiduciary duty.

---

[4] CGLIC does not dispute that it is a "fiduciary." Under ERISA, a fiduciary includes, among others, any person "having any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21). Because CGLIC administers the Plan and makes discretionary benefit determinations (Complaint ¶¶ 12-13), it is a fiduciary.

**III.     ERISA Provides A Remedy For CGLIC's Breach Of Fiduciary Duty.**

It is well settled that "an individual plan participant or beneficiary may bring suit for equitable relief for breach of fiduciary duty." *Watson*, 298 F.3d at 109-110, *citing* 29 U.S.C. § 1132(a)(3) ("A civil action may be brought … by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan…."). Section 1132(a)(3) has been interpreted by the Supreme Court "as 'a safety net, offering appropriate equitable relief for injuries caused by violations that [29 U.S.C. § 1132] does not elsewhere adequately remedy.'" *Id.* (brackets in original), *quoting Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996). CGLIC does not contend that section 1132 elsewhere provides an adequate remedy for Kouvchinov. On the contrary, it argues that section 1132 does not otherwise provide a remedy. (CGLIC's Memorandum, p.3). As a result, in bringing suit for appropriate equitable relief for CGLIC's breach of fiduciary duty, Kouvchinov is doing what expressly has been allowed. Indeed, and not surprisingly, CGLIC does not cite to any comparable case in which a complaint was dismissed at this early stage.

The precise nature of the equitable relief to which Kouvchinov will be entitled necessarily will depend on the facts that emerge during discovery. This is because determining what constitutes appropriate equitable relief requires consideration of the complete circumstances of a case. By its nature, equitable relief is a remedy that "rests uniquely within the discretion of the trial court." *Borden v. Paul Revere Life Ins. Co.*, 935 F.2d 370, 377 (1st Cir. 1991) (citations omitted). A court cannot exercise that broad

discretion without a complete understanding of the relevant circumstances.  Only by being informed about all relevant circumstances can a court "weigh the equities, evaluate competing wrongs, and determine which party, if either, is more deserving of equitable relief."  *Id.* (citations omitted).  As a result, not only is Kouvchinov under no obligation to specify in his complaint the exact equitable relief that would be appropriate here, but it arguably would be premature for him to do so at this early stage.

There is another circumstance that militates against dismissal of Count III: the scope of equitable relief available under section 1132(a)(3) is in a state of significant uncertainty.  *Aetna Health Inc. v. Davila*, 542 U.S. 200, ___, 124 S.Ct. 2488, 2503-2504 (2004) (Ginsburg, J., concurring).  *See also Watson*, 298 F.3d at 110 n.8 (noting uncertainty about equitable remedies under section 1132(a)(3)).  Among other things, the reach of "appropriate equitable relief" as described in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) – i.e., relief historically available in courts of equity at the time of a divided bench – may be substantially broader in cases against *fiduciaries,* such as Kouvchinov's claim against CGLIC, than in cases against *non-fiduciaries*.  *Davila,* 542 U.S. at ___, 124 S.Ct. at 2504 (Ginsburg, J., concurring), *citing* Brief for United States as *Amicus Curiae*, 2003 WL 23011479, 27-28 n.13 ("After Great-West, the government has taken the position in several cases pending in the courts of appeals that [section 1132(a)(3)] allows at least some forms of 'make-whole' relief against a breaching fiduciary in light of the general availability of such relief in equity at the time of the divided bench.").  Traditionally, remedies against a breaching fiduciary were considered "exclusively equitable" and permitted for monetary make-whole relief.

*Restatement (Second) of Trusts*, §§ 197, 205.[5]  Other courts have recognized a distinction between the broader range of equitable remedies available against fiduciaries and the narrower range available against non-fiduciaries.  *See, e.g., Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 143-45 (2d Cir. 1999) (explicating "material" distinction in context of ERISA between actions against non-fiduciaries and actions against fiduciaries).

Given this uncertainty about the scope of appropriate equitable relief under section 1132(a)(3), it would be particularly inappropriate to dismiss Count III, for a court should be reluctant to dismiss a claim raising "a plausible legal theory worthy of further factual development."  *Greenier v. PACE, Local No. 1188*, 201 F.Supp.2d 172, 183 n.8 (D.Me. 2002), *citing* 5A C. Wright & A. Miller, *Federal Practice and Procedure*: Civil 2d § 1357 at 341-43 (1990) ("The court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or extreme, since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions.").

In short, Kouvchinov has set forth sufficient facts to establish a claim for breach of fiduciary duty under ERISA, and he has requested a remedy available for such a breach.  As a result, his complaint states a claim upon which relief can be granted.

---

[5] Indeed, pursuant to section 205 of the Restatement, Kouvchinov's available remedies against CGLIC include make-whole relief – i.e., CGLIC would be chargeable with the losses Kouvchinov incurred as a result of CGLIC's breach of trust.

**Conclusion**

For the foregoing reasons, Kouvchinov respectfully requests that the Court deny CGLIC's motion to dismiss.

                                        ALEXEI KOUVCHINOV
                                        By his attorneys,

                                        /s/ Stephen S. Churchill
                                        Stephen S. Churchill (BBO# 564158)
                                        Hale & Dorr Legal Services Center of
                                        Harvard Law School
                                        122 Boylston Street
                                        Jamaica Plain, MA  02130
                                        (617) 390-2578

Dated: April 18, 2005