UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXEI KOUVCHINOV, </br></br>    Plaintiff, </br>v. </br></br>PARAMETRIC TECHNOLOGY CORPORATION, CDI CORPORATION, LISA WALES, and CONNECTICUT GENERAL LIFE INSURANCE CO., </br></br>    Defendants. | Civil Action No. 04-12531 (MEL) |

MEMORANDUM OF DEFENDANTS
PARAMETRIC TECHNOLOGY CORPORATION AND LISA WALES
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Defendants Parametric Technology Corporation ("PTC") and Lisa Wales ("Ms. Wales") have moved, pursuant to Fed. R. Civ. P. 56, for summary judgment on all remaining Counts in Plaintiff's Complaint. This Memorandum is submitted in support of that motion.

**INTRODUCTION AND SUMMARY OF ARGUMENT**

*Plaintiff is laid off and files for short-term disability benefits*

Plaintiff Alexei Kouvchinov worked at defendant PTC from 1994 until September 2001; at the time of his separation he was doing computer database repair work. On September 10, 2001, PTC notified Plaintiff that he was being laid off as part of a significant reduction in force. At the time of his layoff, Plaintiff accepted a severance package in exchange for a general release of all claims against PTC and its employees (Plaintiff's layoff is therefore not at issue in this case.)

The effective date of Plaintiff's layoff was September 24, 2001. On September 17, 2001, i.e., after PTC notified Plaintiff of his layoff but prior to the effective date of his

termination, Plaintiff filed a claim for short-term disability ("STD") benefits with PTC in which he claimed to be suffering from depression. Because he filed his claim prior to September 24, 2001, Plaintiff was still eligible to submit a claim for STD benefits, and Ms. Wales, a PTC Human Resources generalist assigned to Plaintiff's business unit, assisted Plaintiff in doing so. His claim was referred to PTC's STD and long-term disability ("LTD") carrier, Defendant Connecticut General Life Insurance Company ("CIGNA"). Plaintiff's application for STD benefits was processed by CIGNA and ultimately approved for its maximum duration (i.e., through December 16, 2001) and was referred to CIGNA's LTD benefits department for further action.

***Plaintiff continues to solicit employment opportunities despite his STD claim***

Remarkably, despite having submitted a disability claim, Plaintiff almost immediately began soliciting work at PTC on an independent contractor basis. In addition, during the months of September through November 2001, Plaintiff pursued employment opportunities to perform services at PTC through at least two contract companies, one of which was Defendant CDI Corporation ("CDI"). On or about November 29, 2001, Plaintiff accepted employment with CDI to perform database repair work at PTC. Plaintiff started his assignment at PTC on or about December 4, 2001 -- nearly two weeks before the expiration of his approved STD benefts.

***PTC/Ms. Wales inquire about Plaintiff's status***

After Plaintiff started working for CDI on December 4, 2001, Ms. Wales saw Plaintiff on the PTC premises. Upon speaking directly with Plaintiff, she learned that he was performing database repair work for PTC as an employee of CDI. Recalling that Plaintiff previously had submitted a claim for STD benefits less than three months earlier, Ms. Wales asked PTC benefits specialist Lisa Perry to contact CIGNA to inquire about Plaintiff's status. Ms. Perry learned

2

from Angela Wallace, the CIGNA claim representative responsible for Plaintiff's claim, that he was still actively classified as disabled, that his claim for STD had been approved through December 16th, and that his claim file had been referred to CIGNA's LTD claims department.

Concerned about the impropriety and ethical dilemma created by Plaintiff's apparent representation to CIGNA that he was not capable of working at the same time he was indeed actively working, and unwilling to perpetuate a fraud against CIGNA, PTC notified CDI that it would not permit Plaintiff to work on the PTC project. Unbeknownst to PTC, CDI thereafter terminated Plaintiff's employment outright – a decision in which PTC and Ms. Wales played no part.

*Plaintiff files his Complaint*

Plaintiff filed his Complaint in this matter in December 2004.[1] Four of the seven original causes of action contained in Plaintiff's Complaint remain at this point, and are directed in whole or in part to PTC and/or Ms. Wales.[2] In **Count I**, Plaintiff claims that PTC and Ms. Wales, as "joint employers" of Plaintiff, discriminated against him because of his alleged handicap in violation of the Americans With Disabilities Act ("ADA") and M.G.L. c. 151B.[3] In **Count II**, Plaintiff alleges that PTC and Ms. Wales expelled, disciplined or discriminated against Plaintiff in violation of §510 of ERISA, 29 U.S.C. §1140. **Count IV** of the Complaint alleges that PTC and Ms. Wales intentionally interfered with Plaintiff's advantageous relationship with CDI and/or PTC. Finally, Plaintiff alleges in **Count V** that PTC and Ms. Wales were negligent in

---

[1] Plaintiff previously brought his claims before the Massachusetts Commission Against Discrimination (MCAD), which, following the completion of discovery, issued a finding of Lack of Probable Cause (LOPC) that a violation had been committed.

[2] Following the close of discovery in this matter, Plaintiff withdrew Counts VI and VII. Of the remaining five Counts, Count III was directed only to CIGNA, who Plaintiff since has dismissed from the case. Thus only Counts I, II, IV and V remain and are the subject of the instant Motion.

[3] While PTC does not concede that it was a joint employer of Plaintiff, for purposes of this motion, its analysis of liability addresses issues of liability as if Plaintiff could establish that PTC was his joint employer.

their "investigation" of Plaintiff's status in December 2001, and in their conclusion that Plaintiff was continuing to seek disability benefits while working.

*Summary of Argument*

While Plaintiff would like to attribute his termination from employment by CDI to an act of handicap discrimination or ERISA discrimination/retaliation, the simple facts prevent him from doing so. As set forth more fully below, PTC reasonably relied on the information received from CIGNA to conclude that Plaintiff was still representing himself to CIGNA to be disabled from working on December 4, 2001. PTC therefore requested that CDI remove Plaintiff from the assignment at PTC because of its concern about the obvious dishonesty of Plaintiff actively working while still representing himself to CIGNA as being disabled. Plaintiff cannot prove that the rationale of PTC and Ms. Wales for their actions are pretexts for discrimination, or that either acted with the specific intent of interfering with Plaintiff's rights under ERISA, or in retaliation for having exercised any rights protected by ERISA, and PTC therefore is entitled to Summary Judgment on Counts I and II.

The undisputed evidence also entitles PTC to Summary Judgment on Count IV. Plaintiff cannot establish the requisite level of malice or intent necessary to support a claim for intentional interference with advantageous relations.

Finally, Plaintiff's Count V negligence claim also fails as a matter of law. First, neither PTC nor Ms. Wales owed any common law duty to Plaintiff in connection with their inquiry into Plaintiff's status. Second, even if there was such a common law duty, Plaintiff has no admissible evidence that PTC or Ms. Wales breached it.

I. **THE STANDARD FOR SUMMARY JUDGMENT**

The role of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Thus, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well settled that the mere existence of some alleged factual dispute will not defeat a properly supported summary judgment motion:

> [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted . . . In essence . . . the inquiry . . . is. . .whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-253 (1986). Thus, "'[t]he mere existence of a scintilla of evidence' in the nonmoving party's favor is insufficient to defeat summary judgment." Gonzalez–Pina v. Guillermo Rodriguez, 407 F.3d 425, 431 (1st Cir. 2005) (citing Anderson).

Genuine issues of material fact cannot be conjured by a non-moving party who is merely speculating as to what evidence *might* be produced at trial. On issues where the non-movant bears the burden of proof, he must present definite, competent evidence to rebut the dispositive motion. See Anderson, 477 U.S. at 256-257; "otherwise, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Gonzalez–Pina, 407 F.3d at 431 (internal citation omitted). See also Madsen v. Erwin, 395 Mass. 715, 721 (1985) (same). Instead, the non-moving party must produce admissible evidence that is "significantly probative of the claims he has made." Anderson, 477 U.S. at 253. See also Wooster v. Abdow Corp., 46 Mass. App. Ct. 665, 673 (1999) (same).

Summary judgment often is appropriate in employment discrimination cases where the party resisting judgment "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Feliciano de la Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1, 5 (1st Cir. 2000); Gonzalez-Pina, 407 F.3d at 431; Ronda-Perez v. Banco Bilbao Vizcaya Argentaria, 404 F.3d 42, 44-47 (1st Cir. 2005); Zapata-Matos v. Reckitt & Colman, Inc.,

5

277 F.3d 40, 47 (1st Cir. 2002) (finding summary judgment for employer appropriate when the plaintiff presents "weak issue of fact as to pretext" and there is "strong independent evidence that no discrimination occurred"). This principle has been embraced in Massachusetts. See Sullivan v. Liberty Mutual Ins. Co., 444 Mass. 34 (2005) (affirming summary judgment for employer in claim of age and sex discrimination, and holding that employee could not raise an issue of pretext by criticizing the soundness of the employer's decision-making process, or by arguing that employer's assessment of her job performance was incorrect); see also Matthews v. Ocean Spray Cranberries, 426 Mass. 122, 127 (1997) (summary judgment is appropriate in employment discrimination cases where the defendant's motion demonstrates that the plaintiff is "unable to offer admissible evidence of the defendant's discriminatory intent, motive or state of mind sufficient to carry the plaintiff's burdens and support a judgment in the plaintiff's favor")

II.  **SUMMARY JUDGMENT SHOULD BE GRANTED FOR DEFENDANTS ON COUNTS I AND II OF PLAINTIFF'S COMPLAINT BECAUSE PLAINTIFF IS UNABLE TO SATISFY A *PRIMA FACIE* CASE OF HANDICAP OR ERISA DISCRIMINATION AND, MOREOVER, DEFENDANTS HAVE ARTICULATED LEGITIMATE REASONS FOR THEIR ACTIONS WITH NO EVIDENCE OF PRETEXT**

The analysis of both Count I and Count II is governed by the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and its progeny.[4] See Tobin v. Liberty Mutual Insurance Company, 433 F.3d 100, 104 (1st Cir. 2005) ("In evaluating [plaintiff's] disability discrimination claim under the ADA and Chapter 151B, we use the burden-shifting framework outlined by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)"). See also Barbour v. Dynamics Research Corp., 63 F.3d 32 (1st

---

[4] The First Circuit has long recognized that G.L. c. 151B tracks the ADA in virtually all respects (the lone exception, which is inapplicable to this case, is that the use of mitigating measures must be taken into account when determining the extent of an individual's disability under the ADA, whereas the disability must be considered in its natural state under Massachusetts law). See Gillen v. Fallon Ambulance Service, Inc., 283 F.3d 11, 20, n.5 (1st Cir. 2002) ("although we write in terms of the ADA, our comments apply with equal force to appellant's claim under its state-law counterpart, Mass. Gen. Laws, ch. 151B, §4..."); Ward v. Mass. Health Research Inst., Inc., 209 F.3d 29, 33, n.2 (1st Cir. 2000) ("the Supreme Judicial Court of Massachusetts has indicated that federal case law construing the ADA should be followed in interpreting the Massachusetts disability law") (citing Labonte v. Hutchins & Wheeler, 424 Mass. 813, 678 N.E.2d 853 (1997)).

Cir. 1995) (citing <u>Rath v. Selection Research, Inc.</u>, 978 F.2d 1087, 1089-90 (8th Cir. 1992)) (claims under §510 are analyzed under the three-stage burden shifting framework used in Title VII cases set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) and its progeny).

To establish liability for employment/ERISA discrimination, the plaintiff must first establish a <u>prima facie</u> case. If the plaintiff meets this initial burden, the defendant must articulate a legitimate, non-discriminatory reason for its decision. If the defendant proffers such a reason, the plaintiff can only prevail by proving that the articulated reason is a pretext for unlawful discrimination, and the burden shifts back to the plaintiff to show that the defendant's reason...was a coverup for a discriminatory decision. <u>Tobin</u>, 433 F.3d at 104-105 (citations omitted). <u>See</u> also <u>Abramian v. President & Fellows of Harvard College</u>, 432 Mass. 104, 116 (2000). In that regard, "a pretext for discrimination means more than an unusual act; it means something worse than a business error; pretext means deceit used to cover one's tracks." <u>Ronda-Perez</u>, 404 F.3d at 45 (internal citation omitted). Thus, at the summary judgment stage, the plaintiff must produce evidence to create a genuine issue of fact with respect to two points: (i) whether the employer's articulated reason for its adverse action was a pretext and (ii) whether the real reason was discrimination. <u>See</u> <u>Barbour</u>, 63 F.3d at 39.

### A.   **Plaintiff Cannot Establish a Prima Facie Claim of Disability Discrimination.**

In Count I, Plaintiff alleges that as the actual or joint employer of Plaintiff in December 2001, PTC discriminated against him by causing CDI to terminate him because of his actual disability and/or his record of having a disability and/or because of what PTC perceived to be a disability. Plaintiff admitted under oath, however, that in fact he does not know which of those theories actually applies to his case. (SOF ¶42)[5] Regardless of which theory he were to apply, he cannot establish a <u>prima facie</u> case.

---

[5] "(SOF ¶__)" refers to Defendants' Rule 56.1 Statement of Material Facts Not In Dispute filed with their Motion for Summary Judgment.

7

In order to set forth a <u>prima facie</u> claim of disability discrimination, Plaintiff must establish that (i) he suffers from a disability as defined by the ADA and G.L. c. 151B; (ii) he was nevertheless able to perform the essential functions of his job, either with or without reasonable accommodation; and (iii) defendant took an adverse employment action against him because of, in whole or in part, his protected disability. See <u>Tobin</u>, 433 F.3d at 104-105. A plaintiff is considered disabled under both the ADA and G.L. c. 151B if he "(a) [has] a physical or mental impairment that substantially limits one or more of [his] major life activities . . .; (b) [has] a record of such an impairment; or (c) [is] regarded as having such an impairment." 42 U.S.C. §12102(2); M.G.L. c. 151B, §1(17).

Here, Plaintiff cannot establish that he was disabled within the meaning of the ADA or G.L. c. 151B. The condition from which Plaintiff claims to have suffered and upon which his claim for STD benefits was based was depression. (SOF ¶41) However, according to Plaintiff his alleged depression was only of a short duration. Specifically, Plaintiff filed his claim for STD benefits on September 17, 2001 (<u>Id</u>.), and he has asserted that just 2½ months later on November 29, 2001, he called CIGNA to report that he was returning to work. (<u>Id</u>.) Indeed, Plaintiff admitted under oath that there has not been any period of time since September 1, 2001 when he was unable to care for himself or engage in daily living activities by himself. (<u>Id</u>.) When asked what periods of time was he physically or mentally unable to work, Plaintiff stated only the period from September to November, 2001. (<u>Id</u>.)

A substantial limitation of one or more major life activities "is not a temporary one; the impairment at issue must be a long-term condition." <u>Mulloy v. Acushnet Company</u>, 2005 U.S. Dist. LEXIS 12778 at p. 3 (D. Mass. 2005) (citing <u>Toyota Motor Mfg. Ky, Inc. v. Williams</u>, 534 U.S. 184, 194 (2002)); <u>see also</u> <u>Whitney v. Greenberg, Rosenblatt, Kull & Bitsoli, P.C.</u>, 115

F.Supp. 2d 127, 132 (D. Mass. 2000). Where, as here, the impairment is only of a short duration, a plaintiff cannot establish a prima facie claim.[6]

Plaintiff's handicap/disability discrimination claim fails at the prima facie stage for the additional reason that he has no evidence that PTC regarded him as being disabled or that it knew about any record of impairment that rose to the level of a disability under the ADA or G.L. c. 151B. (SOF ¶42) Indeed, Plaintiff admitted under oath that he has absolutely no proof that PTC took any action based on Plaintiff's alleged handicap/disability. (Id.) At most, PTC knew about Plaintiff's claim for STD benefits; however, as set forth above, given the short duration of Plaintiff's impairment it did not rise to the level of a substantial limitation of a major life activity.

### B. Plaintiff Also Fails To Set Forth A Prima Facie Claim of ERISA Discrimination In Count II

Under §510 of ERISA, it is unlawful "to discharge, fine, suspend, expel, discipline, or discriminate against a participant ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. §1140. "[T]o succeed in an action under §510, most courts require an employee to establish that the employer was motivated by a desire to interfere with the employee's rights under ERISA – protected plans." Zappia v. Nynex Information, No. 90-11366-Y, 1993 U.S. Dist. Lexis 15147 slip op. at p. 6 (D.

---

[6] See Cormier v. Littlefield, 112 F. Supp. 2d 196, 198-99 (D. Mass. 2000). In Cormier, the plaintiff suffered an off-duty knee injury. He was initially placed on light duty at work for two months, and then underwent reconstructive knee surgery, which required him to be out of work for an additional five months. Following plaintiff's five-month medical leave, he was able to return to work without restrictions, although his knee still had some functional limitations for seven more weeks. In entering summary judgment for the employer on plaintiff's handicap/disability claims under the ADA and G.L. 151B, the court in Cormier concluded that plaintiff's "knee injury, which was of a temporary nature, did not substantially limit his life activities and is thus not a 'disability' as defined under the statutes at issue." 112 F. Supp 2d at 199. See also Hallgreen v. Integrated Financial Corporation, 42 Mass. App. Ct. 686, 688-89 (1997) (employee who suffered a knee injury from which she fully recovered in one month did not possess a handicap under G.L. c. 151B because she experienced a temporary disability that did not result in a permanent injury); McDonald v. Pennsylvania, 62 F. 3d 92, 96 (3d. Cir. 1995) (holding that two-month recuperation from surgery does not qualify as handicap or disability under Federal Rehabilitation Act or ADA); Sanderson v. Avneson Prod., Inc., 91 F. 3d 1351, 1354 (9th Cir. 1996) (holding that three and one-half month psychological impairment not a disability under ADA).

Mass. Oct. 22, 1993); see also McGann v. H&H Music Co., 946 F.2d 401, 404 (5th Cir. 1991); Dister v. Continental Group, Inc., 859 F.2d 1108, 1111-13 (2d Cir. 1988); Corcoran v. GAB Business Services, Inc., 723 F. Supp. 966, 969 (S.D.N.Y. 1989). Indeed, "the ultimate inquiry in a §510 case is whether the employment action was taken with the specific intent of interfering with an employee's ERISA benefits." Barbour v. Dynamics Research Corporation, 63 F.3d 32, 37 (1st Cir. 1995) (citations omitted); Benham v. Lenox Savings Bank, 118 F. Supp. 2d 132, 141 (D. Mass. 2000). In order to set forth a prima facie claim of discrimination under §510 in this case, a plaintiff must establish (i) that he participated in a statutorily protected activity; (ii) that an adverse employment action was taken against him; and (iii) that a causal connection existed between the two. Vergato v. Piantedosi Baking Co., Inc, 1996 U.S. Dist. LEXIS 5644 at p. 12 (D. Mass. 1996) (citing Rath, 978 F.2d at 1090).

Here, Plaintiff cannot set forth a prima facie claim of ERISA discrimination under §510 because he cannot establish a causal connection between his filing with PTC a claim for STD benefits on September 17, 2001 and his subsequent termination from employment by CDI on December 7, 2001. As an initial matter, Plaintiff cannot establish a causal connection based only on the fact that his termination from employment by CDI followed his application for benefits on September 17, 2001. Indeed, "[t]he mere fact that an adverse employment action followed protected conduct is not sufficient to make out a causal link between the two events." Iorio v. Aramark Servicemaster, 2005 U.S. Dist. LEXIS 40290, at *68 (D. Mass. 2005). See also Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 58 (1st Cir. 2000) (holding that it is insufficient for the plaintiff "to simply recount that [he] complained and. . . was disciplined").

During his deposition, Plaintiff was questioned about the factual basis of his ERISA discrimination claim. As to his claim against Ms. Wales, Plaintiff testified only that he believed that she was not objective "because she didn't believe that I was disabled, that I had depression"

and that she was not objective because Plaintiff utilized the services of an attorney in connection with an unrelated discrepancy about his benefits. (SOF ¶45). As to his ERISA discrimination claim against PTC, Plaintiff's testimony is equally unavailing. Specifically, when Plaintiff was asked for the factual basis of his claim that PTC either expelled, disciplined or discriminated against him for exercising his right to seek benefits under the disability plan (as Plaintiff sets forth in paragraph 28 of his Complaint), Plaintiff stated only that "I think that I was fired from CDI because PTC had told them that I was on long term disability." (SOF ¶46). Thus Plaintiff's own testimony makes clear that he has no viable basis for establishing a causal connection between his application for and receipt of STD benefits in September 2001, and his termination from employment by CDI in December, 2001.

1. <u>Plaintiff Cannot Establish a Claim Against Ms. Wales</u>

As to his claim against Ms. Wales, Plaintiff can do no better that speculate that Ms. Wales was skeptical in September 2001 that Plaintiff suffered from depression. Plaintiff's unsupported speculation is insufficient to establish a causal connection, and completely ignores the sworn testimony of Ms. Wales that: (i) she did not discuss Plaintiff's disability claim with any employee of CDI; (ii) she did not make any recommendation to anyone about what should be done about Plaintiff's employment with CDI; (iii) she is not the person who spoke to CDI about PTC's concerns about Plaintiff working on the PTC premises; (iv) she did not share any skepticism she may have had about the timing of Plaintiff's STD claim in September 2001 with any other employee of PTC; (v) she did not otherwise have an opinion about whether Plaintiff was disabled or the validity of his STD claim at the time he submitted his STD claim form in September 2001; (vi) she was not the person who made the decision about what, if any, action would be taken relative to Plaintiff's continued presence at PTC after December 4, 2001; (vii) PTC did not adjudicate claims for benefits; and (viii) other than her assistance to Plaintiff in

September 2001, she had no other direct responsibility for processing or monitoring the status of Plaintiff's claim for STD benefits. (SOF ¶47) Because Plaintiff cannot establish a causal connection as to Ms. Wales between his application for and receipt of STD benefits and his subsequent termination by CDI, his §510 claim fails as a matter of law.

2. Plaintiff Cannot Establish a Claim Against PTC.

Plaintiff's claim against PTC fares no better. As set forth above, Plaintiff testified that the only basis of his §510 claim is his belief that PTC communicated false information to CDI. Even assuming only for the sake of argument that Plaintiff could prove that PTC transmitted false information to CDI, Plaintiff would still be unable to establish a causal connection between his application for and receipt of STD benefits and his termination. It is undisputed that the decision to seek Plaintiff's removal from the PTC project was made by Ed Raine, PTC's Vice President of Human Resources. (SOF ¶¶30-31). It is also undisputed that Mr. Raine made the decision to seek Plaintiff's removal from the PTC project not because Plaintiff previously applied for and received STD benefits, but because in December 2001 Mr. Raine believed that Plaintiff was representing himself to CIGNA as being disabled at the same time he was representing himself to CDI and PTC as being physically capable of working. (Id.) Accordingly, Plaintiff's inability to establish the required causal link prevents him from establishing even a prima facie claim of discrimination/retaliation under §510.

    C.    **PTC And Ms. Wales Articulate Legitimate, Non-discriminatory Reasons For Their Actions, And Plaintiff Cannot Prove That The Reasons Are A Pretext For Discrimination.**

Even assuming, arguendo, that Plaintiff could establish a prima facie claim of handicap/disability and ERISA discrimination, PTC and Ms. Wales have satisfied their burden of articulating a non-discriminatory reason for Plaintiff's removal from the PTC premises, i.e., the belief that Plaintiff was violating business ethics by simultaneously holding himself out as being able to work to CDI, yet continuing to represent himself as being disabled to CIGNA. Moreover,

Plaintiff cannot prove that this rationale is a pretext for handicap/disability discrimination or to conceal a specific intent to discriminate against Plaintiff because he filed a claim for STD benefits.

Again, it is undisputed that Ed Raine was the person who made the decision to ask CDI to remove Plaintiff from the assignment at PTC. (SOF ¶¶30-31) Nancy Pugliese, the CDI representative who received the call from PTC, testified that while PTC may have mentioned something about Plaintiff being "on disability" while working, PTC did not state that Plaintiff's disability status was the reason Plaintiff was no longer wanted at PTC; rather, Ms. Pugliese testified that PTC advised her only that Plaintiff's services were no longer needed at PTC without any further explanation. (SOF ¶32) Ms. Pugliese further confirmed that at the time PTC called her to advise her that Plaintiff's services were no longer needed, PTC could not have known that CDI would subsequently terminate Plaintiff, as that subject was not something she had ever discussed with PTC. (Id.)

Plaintiff similarly cannot refute the fact that Mr. Raine's decision was made only <u>after</u> PTC received confirmation from CIGNA that Plaintiff was still collecting STD benefits and that his claim had been approved through December 16, 2001, and was in the process of being referred to CIGNA's LTD group. (SOF ¶32) The reasonableness of PTC's concern about a violation of business ethics is further confirmed by the fact that Plaintiff himself admitted that he could not simultaneously work and collect STD benefits (SOF ¶10), and that Plaintiff's own physician, Dr. Freedberg, confirmed during his deposition that Plaintiff did not tell him prior to December 2001 that Plaintiff had been pursuing employment opportunities or that he had accepted a job. (SOF ¶¶ 22,24). Dr. Freedberg confirmed under oath that, if Plaintiff had notified him of his pursuit of employment opportunities or of the fact that he had accepted a job, Dr. Freedberg would not have continued to represent to CIGNA that Plaintiff was disabled. (Id.). Dr. Freedberg also confirmed that: (i) Plaintiff never disclosed to him that Plaintiff allegedly called CIGNA on November 29, 2001 to state that he was returning to work, (Id.); and

(ii) Plaintiff did not tell Dr. Freedberg that just one week after Dr. Freedberg certified Plaintiff as disabled on September 17, 2001, Plaintiff sent an e-mail to John Busa at PTC seeking employment at PTC as a contractor (Id.)

On the record evidence, Plaintiff cannot show that Defendants' reason for demanding Plaintiff's removal from the PTC assignment was pretextual. See Colburn v. Parker Hannifin/Nichols Portland Division, 429 F. 3d 325 (1st Cir. 2005) (employer's reasonable suspicion based on undisputed facts precluded a finding of pretext for retaliatory discharge).[7]

Indeed, as set forth above, the entire basis of Plaintiff's §510 claim and his handicap/disability claim is his belief that PTC transmitted incorrect information about his status to CDI, and his belief that Ms. Wales doubted his claim of depression. Plaintiff's claim that PTC transmitted incorrect information to CDI is simply wrong. According to Plaintiff, he believes that PTC told CDI that he was on long term disability. (SOF ¶43) However, Plaintiff concedes that he has no personal knowledge of what was said during the conversation between PTC and CDI. (Id.) Moreover, as set forth above, Ms. Pugliese confirmed that while PTC might have indicated that Plaintiff had been "on disability" there was no mention of him collecting long term disability benefits or any suggestion by PTC that Plaintiff's disability status was the reason Plaintiff's services were no longer wanted. (SOF ¶44)

In assessing whether the employer's reason is a pretext, the court's "focus must be on the perception of the decisionmaker," i.e., whether the employer believed its proffered reason to be

---

[7] The First Circuit's decision in Colburn is very instructive on the issues in this case. There, the employer discharged an employee who claimed to need intermittent FMLA leave because of alleged disabling migraine headaches. When the employee failed to provide medical documentation of his illness or to answer the telephone on several occasions when he was out on leave, the employer commenced an investigation that revealed that the employee was engaged in a variety of outside activities at certain times when he was out on leave. Id. at 327-329. Thereafter the employee was discharged, and the employee claimed retaliation for exercising his FMLA rights. Id. Nevertheless, summary judgment was affirmed for the employer based on its reasonable suspicions that Plaintiff was not ill as he had claimed. The Plaintiff in Colburn argued that his activities were not inconsistent with his claimed disabling migraine headaches, and that the employer could have discovered that fact if it had consulted a physician prior to discharge. Id. at 337-338. In rejecting the employee's argument, the court held that whether the employee's activities were consistent with migraines was "irrelevant" – the salient inquiry was whether the information provided by the employee and gathered through the investigation supported the employer's reasonable conclusion that the employee falsified the need to be out of work. Id. at 338. So exactly in the instant case as well.

credible. Mesnick v. General Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991) cert. denied, 504 U.S. 985 (1992). Thus, Plaintiff's own belief that he was mistreated, or his suspicion that the Company *may* have harbored an improper motivation, is insufficient to create an issue of pretext. Plaintiff "cannot rely only on 'subjective feelings of disappointment and disillusionment' with the challenged decision or with [his] working conditions, and must 'do more than simply speculate that [defendant's] motive [was] sinister.'" Iorio, 2005 U.S. Dist. LEXIS 40290, at *51 (D. Mass. 2005) (citing Wallace v. O.C. Tanner Recognition Co., 299 F.3d 96, 101 (1st Cir. 2002)).

Nor can Plaintiff raise an issue of pretext by contesting the objective correctness or fairness of the employer's articulated reasons for its decision. See Ronda-Perez, 404 F. 3d at 45 ("'The issue is not whether [the employer's] reasons . . . were real, but merely whether the decisionmakers believed them to be real'") (internal citation omitted); Keeler v. Putnam Fiduciary Trust Co., 238 F.3d 5, 12-13 (1st Cir. 2001) (recognizing that whether the employer's criticisms of plaintiff were fair is beside the point, so long as they were not discriminatorily motivated). Finally, to prevail on the issue of pretext, Plaintiff must not only show the falsity of the Company's explanation, but also must prove that the employer was actually motivated by unlawful discrimination. See Barbour, 63 F.3d at 37; Zapata-Matos, 277 F. 3d at 45-46 ("the ultimate question is not whether the explanation was false, but whether discrimination was the cause of the termination"). Plaintiff has not established either the falsity of PTC's explanation, or unlawful motivation.

### III. PLAINTIFF'S CLAIM OF INTENTIONAL INTERFERENCE WITH ADVANTAGEOUS RELATIONSHIP FAILS AS A MATTER OF LAW.

In Count IV of his Complaint, Plaintiff alleges that PTC and Wales intentionally interfered with Plaintiff's "advantageous relationship with CDI and/or PTC." (Complaint ¶¶34-35). To prevail on a claim of intentional interference with advantageous relations, a plaintiff must demonstrate (i) an advantageous employment relationship; (ii) that the defendant

knowingly induced the employer to break that relationship; (iii) that the defendant's interference was both intentional and done with improper means or motive; and (iv) that plaintiff was harmed by the defendant's actions. See Sklar v. Beth Israel Deaconess Medical Center, 59 Mass. App. Ct. 550, 554 (2003) (citing Weber v. Community Teamwork, Inc., 434 Mass. 761, 781 (2001)).

More specifically, in the employment law context a supervisor or company official is conditionally privileged to take actions regarding a plaintiff's employment so long as the supervisor does not act with actual malice, i.e., "for a spiteful, malignant purpose, unrelated to an [employer's] legitimate corporate interest." Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 476 (1992). Stated alternatively, to prove actual malice a plaintiff must prove that the supervisor "was personally hostile or harbored ill will toward the plaintiff". Sklar, 59 Mass. App. Ct. at 554. This conditional privilege exists to protect corporate officials from liability because "their freedom of action directed toward corporate purposes should not be curtailed by fear of personal liability." Gram v. Liberty Mut. Ins. Co., 384 Mass. 659, 663-64 (1981).

Here, there is absolutely no evidence that PTC or Ms. Wales engaged in conduct that could rise to the level of actual malice or was intentional and done with an improper means or motive. For example, when questioned about the factual basis of the claim in Count IV against Ms. Wales, Plaintiff testified only that Ms. Wales "was negligent in the investigation" of his status in December 2001 because she "never asked me whether I had received any money [from CIGNA] while working at PTC." (SOF ¶48) (emphasis added). As set forth above, because Plaintiff's interference claim against Ms. Wales is based entirely on alleged negligent conduct by her, Plaintiff cannot establish that her alleged interference with Plaintiff's relationship with CDI and/or PTC was both (i) intentional and (ii) done with improper means or motive. See Mathias v. Beatrice Foods Co., 23 Mass. App. Ct. 915, 917 (1986) (summary judgment for defendants affirmed where plaintiff presented no evidence that supervisors had acted with actual malice, stating that "negligence" or "sloppy and unfair business practices" do not negate the conditional

privilege of corporate officers acting within the general sphere of their responsibilities with their subordinates). Accordingly, Ms. Wales is entitled to summary judgment on Count IV.

Like Ms. Wales, PTC is also entitled to summary judgment on Count IV because Plaintiff's evidence of intentional interference accompanied by improper means or motive is similarly non-existent. When questioned about the basis of his claim against PTC, Plaintiff stated only that he believed that PTC provided false information to CDI by telling CDI he was on long term disability. (SOF ¶49) When asked to identify the improper motive referenced in paragraph 34 of his Complaint, Plaintiff stated only, "I already mentioned, long term disability." (Id.). When asked to provide the factual basis for his claim in paragraph 34 that PTC acted "with actual malice" Plaintiff stated only, "PTC could have said that they just didn't need me. Why would they provide the information about the disability?" (Id.).

Plaintiff's testimony makes clear that he has no evidence that PTC acted with an improper motive or with actual malice. As an initial matter and as set forth above, Plaintiff's belief that PTC told CDI that Plaintiff was on long term disability is simply wrong. However, even assuming only for sake of argument that PTC mistakenly told CDI that Plaintiff was collecting LTD benefits, Plaintiff cannot establish that PTC acted with actual malice or with an improper motive. See Alba v. Sampson, 44 Mass. App. Ct. 311, 316-17, 690 N.E.2d 1240 (1998) (although evidence demonstrating the supervisor directed profanities toward plaintiff, made derogatory comments about plaintiff's clothes and background, and was uncivil to plaintiff, tended to show that supervisor disliked plaintiff, "[a]n inference that a defendant did not like plaintiff, however, would not warrant the further inference that the defendant probably acted with ill will in securing the plaintiff's discharge.").[8]

---

[8] See also Sklar, 59 Mass. App. Ct. 556 (rejecting argument that supervisor's malice could be established by evidence that supervisor could have conducted a better investigation: "even a negligent, sloppy, or callous investigation does not produce an inference of spite or personal hostility"); King v. Driscoll, 418 Mass. 576, 587 (1994), aff'd, 424 Mass. 1 (1996) (holding that "personal dislike [toward plaintiff] will not warrant an inference of the requisite ill will" necessary to establish that a corporate officer acted with actual malice); Wright, 412 Mass. at 476 (administrator was entitled to judgment as a matter of law where the record was devoid of evidence that actions of a hospital administrator were unrelated to a legitimate corporate interest).

### IV. PLAINTIFF'S NEGLIGENCE CLAIM FAILS AS A MATTER OF LAW

In count V of his Complaint, Plaintiff alleges that PTC and Ms. Wales "had a duty to exercise reasonable care in connection with [Plaintiff's] employment" and that they breached that duty of care "by conducting a negligent investigation that concluded, falsely, that [Plaintiff] was continuing to seek and to collect disability benefits while working." (Complaint ¶¶39-40).

When asked about the basis of his claim of a negligent investigation by Wales and PTC, Plaintiff stated only that "[n]obody asked me whether I was receiving benefits from CIGNA." (SOF ¶50)[9]

Count V fails for several reasons. First, Plaintiff's Complaint does not allege with any particularity the legal or factual basis for his claim that PTC and Ms. Wales owed Plaintiff a duty of reasonable care in connection with his employment. In fact, there is no basis for such a claim of negligent investigation. Indeed, it is well-settled in Massachusetts that "an investigator's duty runs to the person or entity on whose behalf the investigation is conducted, see Deerfield Plastics Co., v. Hartford Ins. Co, 404 Mass. 484, 487, 536 N.E.2d 322 (1989), not to the person being investigated." O'Connell v. Bank of Boston, 37 Mass. App. Ct. 416, 419, 640 N.E.2d 513 (1994); see also Dwan v. The City of Boston, 2002 U.S. Dist. LEXIS 5628 at p. 6 (same). Indeed, "[a] slipshod or incomplete investigation, without more, is a disservice to the one who commissioned the investigation, not to its subject." O'Connell, 37 Mass. App. Ct. at 419.[10]

---

[9] Notably, while Plaintiff asserted at his deposition that Ms. Wales could have (and presumably should have) asked Plaintiff whether he had called CIGNA to report his return to work, he admitted that he simply could have told this to Ms. Wales himself, but that he did not do so. (Id.). Nor did Plaintiff, after learning of CDI's termination decision, ever ask CIGNA to call PTC to confirm that Plaintiff had made his alleged call notifying CIGNA of his return to work. Plaintiff further admitted that there were no other facts upon which he is basing his negligence claim. (Id.)

[10] The facts of the O'Connell decision conclusively establish why PTC and Ms. Wales are entitled to summary judgment on Count V. In O'Connell, plaintiff was a former bank teller employed by defendant who was accused of theft from the bank, based on a paper trail leading back to plaintiff. The defendant conducted an investigation into the matter and concluded that plaintiff had stolen the missing money. Criminal charges were thereafter brought against plaintiff. Plaintiff was acquitted on the basis of a handwriting expert's testimony that various forged documents were not written by plaintiff. Plaintiff thereafter sued defendant for, among other causes of action, malicious prosecution and negligent investigation. Discovery in the civil case revealed a video tape ignored by the bank's investigator that established plaintiff's innocence of theft. The Court nevertheless dismissed the negligent investigation claim even though it believed that a jury would have been warranted in concluding that the defendant's

Moreover, even if Plaintiff had a viable claim for negligent investigation, he cannot establish a breach of duty by PTC and Ms. Wales. As set forth above, Plaintiff's entire claim is based on the fact that he was not asked by Ms. Wales whether he reported his return to work to CIGNA. That is insufficient to establish a breach of duty owed by Ms. Wales and/or PTC. As Ms. Wales explained, PTC went directly to CIGNA for information about Plaintiff's status. There is no dispute that CIGNA advised PTC on December 4th that Plaintiff was still classified as disabled under the STD policy and that his claim had been approved through December 16, 2001. (SOF ¶¶25-29, 31) Furthermore, CIGNA had no record of receiving any telephone call from Plaintiff advising CIGNA of Plaintiff's return to work.[11] (SOF ¶¶37-38)

Indeed, the "failure" of PTC and Ms. Wales to discover Plaintiff's alleged phone call to CIGNA was no more a product of Defendants' negligence than it was the result of Plaintiff's incredible efforts to "play the system" and conceal his status from those responsible for evaluating his physical condition and his STD claim. It is undisputed and Plaintiff has admitted that Plaintiff: (i) sent an e-mail message to John Busa of PTC on September 25, 2001 (i.e., just the next day after the effective date of his layoff and just 7 days after he submitted his STD claim) offering his services to PTC as an independent contractor, (SOF ¶9); (ii) actively pursued discussions for employment with AR Consulting and CDI throughout October and November 2001, all while collecting STD benefits, (SOF ¶11); (iii) accepted a position with CDI <u>but lied</u> to CDI by requesting, in response to CDI's instruction that he report to work on December 4, 2001, that his start date be December 18, 2001 (i.e., the day after his entitlement to STD benefits was to end) because he was working for another company, (SOF ¶16); (iv) did not tell CIGNA or his own doctor at any time prior to November 29, 2001 that he was negotiating an employment

---

investigation was deficient: "The assumption [that a jury would have been warranted in concluding that the defendant's investigation was deficient] does not mean that the negligent investigation count should have gone to the jury." Id.

[11] Plaintiff himself has no independent evidence or written record of having made such a call. Rather, he claims to have made the call from the Odessa restaurant, but has no notes of the alleged call. (SOF ¶50, n.7)

contract with CDI, (SOF ¶17); and (v) did not tell CIGNA or his doctor about his negotiations and job offer from ARC (Id.) Furthermore, Plaintiff admits that at no point in time – even after his termination by CDI – did he ever ask CIGNA to contact PTC to tell PTC about the telephone call to CIGNA that Plaintiff claims to have made on November 29, 2001. (SOF ¶33).

Under these circumstances, Plaintiff is unable to establish a breach of any common law duty owed to him by PTC and Ms. Wales. Therefore, PTC and Ms. Wales are entitled to summary judgment on Count V.

## CONCLUSION

For all the foregoing reasons, PTC and Ms. Wales request that this Court enter Summary Judgment for them on the all remaining Counts (I, II, IV and V) of Plaintiff's Complaint.

Respectfully submitted,

PARAMETRIC TECHNOLOGY CORPORATION
and LISA WALES,

By their attorneys,

/s/ Guy P. Tully
Guy P. Tully, BBO #555625
Jackson Lewis LLP
75 Park Plaza
Boston, MA 02116
(617) 367-0025

### CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2006, a copy of the foregoing was served by electronic mail and through the ECF system on Plaintiff's counsel.

/s/ Guy P. Tully