# **EXHIBIT M**

1

Volume I
Pages 1 to 38
Exhibits: None

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - -x
                                  :
ALEXEI KOUVCHINOV,                :
          Plaintiff,              :
                                  :
     vs.                          :   Civil Action
                                  :   No. 04 12531 MEL
PARAMETRIC TECHNOLOGY             :
CORPORATION, CDI CORPORATION,     :
LISA WALES, and CONNECTICUT       :
GENERAL LIFE INSURANCE CO.,       :
          Defendant.              :
                                  :
- - - - - - - - - - - - - - - -x

          DEPOSITION OF EDWARD RAINE, a witness
called on behalf of the Plaintiff, taken pursuant to
the Federal Rules of Civil Procedure, before Carol
H. Kusinitz, Registered Professional Reporter and
Notary Public in and for the Commonwealth of
Massachusetts, at the Offices of Jackson Lewis LLP,
75 Park Plaza, Boston, Massachusetts, on Friday,
March 3, 2006, commencing at 10:00 a.m.

PRESENT:

     Hale and Dorr Legal Services Center
          (by Stephen Churchill, Esq.)
          Harvard Law School, 122 Boylston Street,
          Jamaica Plain, MA 02130, for the Plaintiff.

     Jackson Lewis LLP (by Guy P. Tully, Esq.)
          75 Park Plaza, Boston, MA 02116,
          for the Defendants Parametric Technology
          Corporation and Lisa Wales.

Also Present:  Alexei Kouvchinov
               Helen Kim

               *  *  *  *

18

1     Q.   Did you review any documents?

2     A.   I did.

3     Q.   What did you review?

4     A.   Some of the e-mails that -- certainly

5 including my e-mail, and some, I don't know if it

6 was all, of the deposition for Lisa Wales.

7     Q.   All right.  You had never met Mr.

8 Kouvchinov until today; is that correct?

9     A.   That's correct.

10    Q.   When is the first time at PTC that you had

11 any involvement with any issues involving Mr.

12 Kouvchinov?

13    A.   Well, I didn't even remember Mr.

14 Kouvchinov's name, so it was only as a result of

15 reviewing the e-mail, the e-mail that's involved in

16 this case, that his name even appeared.  So I can

17 tell you that was the -- it was that day only, when

18 I received the e-mail and responded to it.

19    Q.   Let me show you what was previously marked

20 as Exhibit 35, which appears to be an e-mail from

21 you to others dated Thursday, December 6th, 2001; is

22 that correct?

23    A.   That's correct.

24    Q.   And the time that you sent the e-mail was

19

1    4:25 in the afternoon?

2        A.    Yes.

3        Q.    And your e-mail was responding to an e-mail

4    from Lisa Wales?

5        A.    That's correct.

6        Q.    And her e-mail was dated December 6th,

7    2001; is that right?

8        A.    That's correct.

9        Q.    And the time for her e-mail was 12:00 noon?

10       A.    Yes.

11       Q.    Is this the e-mail that you were referring

12   to?

13       A.    It was.

14       Q.    So is it the case that the first time that

15   you had any involvement with Mr. Kouvchinov's

16   employment was when you received this December 6th

17   e-mail from Ms. Wales?

18       A.    Yes.

19       Q.    Did you also receive a voice mail from Ms.

20   Wales with respect to the issues addressed in this

21   e-mail?

22       A.    I may have.  I did not recall it.

23       Q.    Other than the e-mail from Ms. Wales that's

24   in this exhibit, did you ever receive any other

1    e-mails from Ms. Wales about Mr. Kouvchinov?

2        A.    Not to my knowledge.

3        Q.    And other than the e-mail that you drafted

4    to others on December 6th that appears in this

5    exhibit, did you send e-mails to anybody else about

6    Mr. Kouvchinov?

7        A.    I don't believe so.

8        Q.    All right.  With respect to your e-mail of

9    December 6th, did you look at or rely on any other

10   information when preparing this e-mail, beyond what

11   was in Ms. Wales' e-mail?

12            MR. TULLY:  I'm sorry.  Could you read the

13   question back.

14            (Question read)

15       A.    I don't remember, but I don't think so.

16       Q.    All right.  In the fourth full paragraph of

17   your e-mail -- I'll just read it.  It says, "From

18   the facts written below, it seems clear that Alexei

19   has breached business ethics by claiming for STD

20   while at the same time being able to perform work as

21   a contractor at PTC."  Did I read that correctly?

22       A.    Yes.

23       Q.    What business ethics did Mr. Kouvchinov

24   breach?

21

1     A.    Well, from my perspective, he was on

2   disability, and if on disability, it did not seem

3   reasonable that he could be available to work at the

4   same time.

5     Q.    When you say that he was on disability,

6   what do you mean by that?

7     A.    Well, from the e-mail from Lisa Wales, it

8   indicated that he was on disability.  So...

9     Q.    Was it your understanding that he was

10  receiving disability benefits while at the same time

11  he was working at PTC?

12    A.    That was my understanding, yes.

13    Q.    And was it your understanding that Mr.

14  Kouvchinov was knowingly receiving STD benefits

15  while he was working at PTC?

16    A.    Well, that's the inference from this

17  e-mail, yes.

18    Q.    With respect to the conclusions that you

19  reached, as expressed in your e-mail, you were

20  relying on Ms. Wales' e-mail; is that right?

21    A.    That's correct.

22    Q.    In fact, that's the only thing that you

23  were relying on; is that right?

24    A.    That's correct.

34

1      Q.    Did you ever have any other occasions

2    during your employment at PTC when you dealt with an

3    employee issue that also involved disability

4    benefits in some way?

5      A.    Not to my recollection.

6      Q.    Who made the decision that Mr. Kouvchinov

7    could no longer work at PTC?

8      A.    I would take responsibility for that.

9           MR. CHURCHILL:  I have no further

10   questions.

11          MR. TULLY:  I have just a few.

12                   CROSS EXAMINATION

13    BY MR. TULLY:

14     Q.    Mr. Raine, if I understood your testimony

15   today, you said that you relied entirely upon the

16   information, in terms of this decision that was made

17   relative to Mr. Kouvchinov, that you relied entirely

18   upon the information that was contained in the

19   e-mail from Lisa Wales; is that correct?

20     A.    Correct.

21     Q.    And looking at Page 2 of Exhibit 35, you

22   would agree, wouldn't you, that the second-to-last

23   paragraph, there is information there about Lisa

24   Perry having confirmed with CIGNA that they had

35

1  extended Mr. Kouvchinov's claim through December

2  16th, 2001?  Do you see that?

3       A.    I do.  And that was what I relied on.

4       Q.    Did you have any reason to doubt the

5  integrity of the information that Ms. Wales provided

6  to you at the time?

7       A.    None whatsoever.

8       Q.    Now, in terms of the concern about a breach

9  of business ethics, if I understood you correctly,

10  your concern was the fact that Mr. Kouvchinov was

11  apparently holding himself out to CIGNA as being

12  unable to work but simultaneously holding himself

13  out to CDI and PTC as being able to work; is that

14  correct?

15            MR. CHURCHILL:  Objection.

16       A.    That's correct.

17       Q.    Now, whether Mr. Kouvchinov's actions were

18  intentional or unintentional, is it fair to say that

19  your concern -- part of your concern was that PTC

20  was not going to be a party to that relative to its

21  carrier CIGNA?

22            MR. CHURCHILL:  Objection.

23       A.    Absolutely.  Very simple.  We weren't going

24  to pay -- you're either on disability or he was not.