UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXEI KOUVCHINOV,<br>    Plaintiff,<br>v.<br><br>PARAMETRIC TECHNOLOGY<br>CORPORATION, CDI CORPORATION,<br>LISA WALES, and CONNECTICUT<br>GENERAL LIFE INSURANCE CO.,<br>    Defendants. | Civil Action No. 04-12531 (MEL) |

**MEMORANDUM OF DEFENDANTS PARAMETRIC TECHNOLOGY
CORPORATION AND LISA WALES IN REPLY TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff's Opposition is inadequate to defeat summary judgment because (i) Plaintiff cannot, and thus does not, controvert a single one of the undisputed material facts cited by Defendants in support of their Motion, and (ii) the additional facts cited by Plaintiff in his opposition merely confirm that Plaintiff's "evidence" of pretext is based on inadmissible speculation and conjecture.[1]

---

[1] Here, of the 50 numbered paragraphs contained in Defendants' Statement of Undisputed Facts, Plaintiff admittedly does not even address 40 of them and, of the remaining 10 paragraphs in Defendants' Statement, Plaintiff does not actually controvert any of them, but merely attempts to further explain the attendant circumstances (see Plaintiff's Statement of Facts, pp. 14-16 & n.5). Accordingly, L.R. 56.1 makes clear that all of the facts contained in Defendants' Statement are deemed admitted. See L.R. 56.1 ("[m]aterial facts of record set forth in the statement required to be filed by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties."). Perhaps cognizant of his obligation pursuant to L.R. 56.1, Plaintiff nevertheless disregards it by strangely asserting only that "[b]y not responding to all of the defendants' alleged facts, [Plaintiff] does not intend to concede that those alleged facts, or the characterization of them, are relevant, material or accurate." Plaintiff's Statement of Facts, p. 14 & n.5.

Similarly puzzling in the summary judgment context is Plaintiff's unsupported suggestion that Defendants may not rely on his sworn deposition testimony (or lack thereof) about the complete factual basis for his claims. See Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Opposition"), p.5 ("The proof of legal claims is for lawyers to marshal, and it asks too much of a plaintiff to require that he articulate during his deposition all evidence supporting his claim."). Apparently Plaintiff would have his deposition treated as a gratuitous exercise to be supplemented by his lawyer as needs be.

A. **Plaintiff Cannot Establish A Prima Facie Claim As To Count I Because He Did Not Have A Substantial Impairment Of A Major Life Activity.**

PTC moved for summary judgment on the ADA/151B handicap/disability discrimination claim on the threshold ground that Plaintiff cannot establish even a prima facie claim of handicap/disability discrimination because he did not suffer from a substantial impairment of a major life activity in December 2001. Indeed, the undisputed evidence cited by PTC, including Plaintiff's own testimony, confirms that Plaintiff's depression did not create a substantial impairment of a major life activity and was only of short duration.[2]

In his opposition to summary judgment, Plaintiff simply ignores his sworn deposition testimony about the short-term nature of his impairment, as well as his admission that the condition did not substantially limit a major life activity. Rather, Plaintiff attempts to manufacture a long-term impairment by reference to the fact that Plaintiff first consulted with Dr. Freedberg in June 2000 for symptoms of dysthymia, i.e., mild depression. (See Opposition, p. 6; Freedberg Tr., p. 9.)[3] However, Dr. Freedberg's own consultation notes from that session confirm that Plaintiff was not suffering from any substantial impairment of a major life activity but, rather, make clear that Plaintiff "was definitely not psychotic, incompetent, despairing or suicidal" and that Plaintiff "has no interest in any kind of counseling and would like to have as few appointments as possible." (Churchill Dec. Tab H, Ex. 3.) Thus, there is no indication whatsoever in Dr. Freedberg's notes that Plaintiff was, in June 2000, suffering from any

---

[2] For example, as set forth at pages 7-8 of Defendants' memorandum, Plaintiff filed his claim for STD benefits on September 17, 2001 (SOF ¶41), and he claims that just 2½ months later, on November 29, 2001, he called CIGNA to report that he was no longer disabled and was returning to work. (Id.) Indeed, Plaintiff admitted under oath that there has not been any period of time since September 1, 2001 when he was unable to care for himself or engage in daily living activities by himself. (Id.) When asked what periods of time was he physically or mentally unable to work, Plaintiff stated only the period from September to November, 2001. (Id.)

[3] "(Freedberg Tr., p. ___)" refers to the deposition of Dr. Leonard Freedberg taken on March 7, 2006. Excerpts from Dr. Freedberg's transcript referenced in this reply memorandum are attached as Exhibit Z to the Declaration of Stephen S. Churchill filed with Plaintiff's Opposition.

2

impairment that substantially limited a major life activity. Moreover, it is undisputed that Dr. Freedberg did not see Plaintiff again after that single June 2000 session until September 17, 2001, following Plaintiff's return from a trip to Russia. (See Freedberg Tr., p. 10.) Finally, any notion that Plaintiff was "substantially limited" in his ability to work or learn during the June 2000 through September 2001 period is simply and conclusively negated by the fact that Plaintiff was continually employed by PTC in a highly technical full-time position throughout this period.

Further, Plaintiff cannot establish that he was substantially limited in a major life activity during the subsequent September – December 2001 period. The short-term and insubstantial nature of Plaintiff's impairment during this period is conclusively established by the fact that during the months of September, October and November 2001, Plaintiff represented to several individuals and companies that he was available to perform full-time technical work, and Plaintiff actually returned to work on December 4, 2001.

Plaintiff's opposition not only ignores the controlling case law on this issue (cited at pages 7-9 of Defendants' memorandum) supporting the conclusion that he was not handicapped, but also fails to cite even a single case supporting a conclusion that Plaintiff was handicapped.[4] There simply is nothing in Dr. Freedberg's notes that would substantiate a conclusion that Plaintiff was significantly restricted in the ability to perform either a class of jobs or a broad

---

[4] Meanwhile, the failure of Plaintiff's evidence to establish that he suffered a substantial impairment of a major life activity is underscored by a decision from this Court just three weeks ago in Poh v. Massachusetts Correction Officers Federated Union et al., (C.A. No. 03-11987-RWZ, July 7, 2006) (Zobel, J.). In that case, the Court granted summary judgment in favor of the defendants while rejecting Plaintiff's claim that he suffered from an impairment that substantially limited his major life activities of performing manual tasks, lifting and sleeping, where Plaintiff's only evidence of an impairment to these abilities was his own testimony. (Id. at pp. 4-5.)

The Court similarly rejected Plaintiff's claim that he had a substantial limitation on his ability to work. The Court recognized that an "ADA claimant alleging substantial imitation on his ability to work must make a 'weighty showing.'" (Id. at p. 5 (quoting Bailey v. Georgia-Pacific Corp., 306 F.3d 1162, 1168 (1st Cir. 2002)).) The Court further recognized that a plaintiff "cannot just show that his ability to perform a 'single, particular job' was limited; rather he 'must prove that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."'" (Id. (quoting 29 C.F.R. §1630.2(j)(3)(l)).) Finally, the Court found further that plaintiff's physical impairment, which lasted for three years, did not result in a permanent or long term limitation on his ability to work. (Id. at p. 6.)

3

range of jobs in various classes as compared to the average person having comparable training, skills and abilities. Nor is there any record evidence whatsoever that supports Plaintiff's self-serving claim that he suffered a substantial limitation in his ability to learn. Accordingly, Plaintiff's inability to establish even a prima facie claim of handicap/disability discrimination entitles PTC to summary judgment on Count 1 of the Complaint.

### B. Plaintiff Fails To Raise A Genuine Issue Of Material Fact As To Whether PTC's Explanations For Its Actions Was Pretext.

Even assuming Plaintiff could establish a prima facie claim of handicap/disability discrimination in Count I, summary judgment in favor of PTC is nevertheless appropriate because Plaintiff failed to prove that the reasons articulated by PTC for its actions was a pretext.

Plaintiff attempts to raise an issue of pretext in Count I by arguing that Ms. Wales, who coordinated the inquiry into Plaintiff's return to work at PTC as an employee of CDI in December 2001, was somehow biased against Plaintiff. However, Plaintiff's Opposition relies solely upon illogical and unsupported speculation to support this contention. The sole basis for Plaintiff's claim that Ms. Wales was biased is her statement that she thought it was "strange" or "odd" that Plaintiff first filed his STD claim a week after he was notified of the decision that he was to be laid off. Plaintiff cites no factual or legal authority for the proposition that because Ms. Wales thought the timing of the claim was strange or odd, or even that she may have been skeptical of the claim, she was biased against him.[5] The record evidence does not permit such an extraordinary leap and actually undermines Plaintiff's contention. Significantly, Ms. Wales took no action to prevent or discourage Plaintiff from submitting his claim for STD benefits in September 2001 and, in fact, assisted him with the processing of the claim. (SOF ¶5.)

---

[5] The reaction of Ms. Wales was entirely reasonable. Plaintiff had already been notified of his selection for layoff and was no longer required to report to work at the time he submitted his STD claim.

4

Moreover, there is no evidence that she in any way attempted to influence or interfere with CIGNA's decision to approve Plaintiff's claim for STD benefits.

Equally unavailing is Plaintiff's claim that Ms. Wales falsely accused Plaintiff of "breaching ethical standards." (Opposition at p. 11.) A review of Ms. Wales's communication with Ed Raine about Plaintiff's return to the PTC premises as an employee of CDI in December 2001 confirms that she never accused Plaintiff of breaching ethical standards. (SOF ¶29.) The only information Ms. Wales communicated to Mr. Raine was the same information communicated to PTC Benefits Specialist Lisa Perry from the CIGNA Claims Adjuster, Angela Wallace. Plaintiff has not identified a single statement in Ms. Wales's electronic communication to Mr. Raine that is false or inaccurate.

Plaintiff further accuses Ms. Wales of concealing from Mr. Raine information that Plaintiff was not receiving STD benefits while he was working for CDI. In support of that claim, Plaintiff cites only the fact that CIGNA sent PTC a message at 5:39 p.m. on December 6, 2001 that indicated, among much else, that Plaintiff had been "paid through 11-30-01." Plaintiff's suggestion of the importance of this last single sentence is patently and grossly misleading. First, as is self-evident from the entirety of the message in question, it was a confirmation that Plaintiff's benefits had been approved through December 16th, and was transmitted to PTC by Angela Wallace of CIGNA *in response to PTC's inquiry of CIGNA regarding Plaintiff's STD benefits status*. (SOF ¶34.) The import of the message to Ms. Wales was very clear – plaintiff was working during a period in which his benefits had been approved. There is absolutely no evidence whatsoever that Ms. Wales actually deemed or should have deemed the "paid through" information to be relevant, or that she actively concealed it from Mr. Raine. Further, the communications from CIGNA make clear that the decision by CIGNA on December 6, 2001 to

deny Plaintiff's benefits as of that date was based entirely on the fact that Plaintiff had returned to work in a substantially similar capacity on December 4, 2001. In other words, CIGNA's action to stop paying benefits to Plaintiff was based solely on information obtained from PTC, and was in no way a result of any alleged notification by Plaintiff that he was returning to work (as Plaintiff contends).[6]

Plaintiff's additional effort to establish pretext is based on his claim that Ms. Wales was biased because she conducted only a "perfunctory" inquiry into Plaintiff's status on December 4, 2001. Because he cannot credibly attack the reasonableness of Ms. Wales's reliance on information that PTC received directly from CIGNA, Plaintiff now complains that Ms. Wales should have asked <u>him</u> about his status, and that her failure to do so was a deviation from her normal practices and PTC's policies. Plaintiff's attempt to defeat summary judgment on these grounds fails because it is well established that a plaintiff cannot raise an issue of pretext by challenging the sufficiency of an employer's investigation.

The fact remains that whether or not Ms. Wales could have undertaken her investigation differently does not create a triable issue of pretext. The First Circuit addressed such a claim just last year in <u>Ronda-Perez v. Banco Bilbao Vizcaya Argentaria – Puerto Rico</u>, 404 F.3d 42 (1st Cir.

---

[6] In fact, with this reply Defendants have also filed the Declaration of Angela Wallace, CIGNA's claim handler for Plaintiff's case, which puts to rest any notion that the stoppage of <u>actual payments</u> on November 30th was a result of any action by Plaintiff. Indeed, CIGNA had already begun the process of issuing Plaintiff another benefits check. Specifically, on November 15, 2001 Ms Wallace referred Plaintiff's file to CIGNA's medical department for further evaluation. CIGNA's nurse case manager, Brenda Jackson, concluded that Dr. Freedberg's latest assessment supported functional impairments and reported the same to Ms. Wallace. (Wallace Dec.. ¶5.) However, Ms. Wallace did not review the nurse case manager's assessment until December 4th. (Id. at ¶6.) At 3:59 p.m. that day she approved Plaintiff's STD claim through the end of the STD benefits period of December 16, 2001, at which time the claim was to be referred for long-term disability evaluation. Id. Until Ms. Wallace approved the extension of Plaintiff's benefits on December 4th, CIGNA's system would not have processed a benefit payments beyond the prior approved through date of November 30, 2001. (Wallace Dec. ¶7) This (and this alone) explains why Plaintiff was not paid benefits beyond November 30th. (Id..) Finally, having been informed that Plaintiff had returned to work in the same capacity, on December 7, 2001 Ms. Wallace denied Plaintiff's claim. (Id. at ¶10.) At that point, Ms. Wallace also voided the benefits check that had been set in motion by her December 4, 2001 approval of the claim. Id. Therefore, Plaintiff's assertion that he was not still in the process of collecting benefits from CIGNA as of December 6, 2001 is simply wrong.

2005), in which the plaintiff argued that summary judgment should be denied because: (a) the employer did not conduct a proper investigation of plaintiff's alleged misconduct, and (b) the version of events provided by co-workers complaining about plaintiff should have been deemed unworthy of belief, because the co-workers were not disinterested witnesses. The First Circuit rejected these arguments, finding, among other things, that while plaintiff denied engaging alleged misconduct that was alleged by co-workers, the relevant inquiry is not whether plaintiff's version of events was true, but whether the investigator and his superiors believed what he had been told by those he interviewed. Id. at 45. See also Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 674 (1st Cir. 1996) ("the issue is not whether [the employer's] reasons . . . were real, but merely whether the decisonmakers . . . believed them to be real."). The Court also observed that the anti-discrimination laws do not insure against inaccuracies by an employer, but only discriminatory actions. See Ronda-Perez, 404 F.3d at 47.

Here, there is absolutely no evidence that Ms. Wales's inquiry and Mr. Raine's decision to seek Plaintiff's removal from the PTC premises was based on anything other than legitimate business considerations based on the unequivocal information provided to PTC by CIGNA. Plaintiff's opposition fails to cite even a single case where the Court found evidence of a similar nature sufficient to defeat summary judgment.[7]

Equally unavailing is Plaintiff's claim that Ms. Wales deviated from her normal practices when she investigated Plaintiff's STD status, and that PTC did not follow its own policies relating to employee discipline. First, there is no record evidence of what the "normal practice" of Ms. Wales and/or PTC was in situations involving unethical conduct. Rather, the only

---

[7] Plaintiff's passing reference to Ms. Wales's testimony that she may have discarded notes made during her investigation does not permit an inference that her notes contained information harmful to her or to PTC. (See Opposition, p.15 & n.12.) It is undisputed that Ms. Wales did not have any communications with Plaintiff or with CIGNA as part of her inquiry. (Wales Tr. I, pp. 63-65.) Therefore, her notes would not have contained any such information.

7

"evidence" of Ms. Wales' alleged normal practices is a reference in her personnel record to a commendation for having "thoroughly investigated" some unidentified visa cases. To the extent PTC's policies contemplated a particular course of action in connection with employee discipline, the policy referenced by Plaintiff in his opposition specifically states that the course of action could be disregarded in various situations including "unethical conduct."

Finally, Plaintiff ignores the fact that, had Ms. Wales asked Plaintiff about his status and been told by Plaintiff that he had called CIGNA on November 29, 2001 to report his return to work, CIGNA's records would still have indicated that it had not received such a call from Plaintiff. Therefore, Ms. Wales would have had independent reasons for doubting Plaintiff's credibility as of December 4, 2001.

### C. Plaintiff Has Failed To Establish A Prima Facie Claim of Discrimination/Retaliation Under Section 510 of ERISA, Or That The Reasons For Defendants' Actions Were Pretextual

Plaintiff cannot establish a prima facie claim of discrimination/retaliation supporting his claim in Count II that Defendants took their actions in violation of §510 of ERISA, i.e., specifically to discriminate/retaliate against Plaintiff for having filed a claim for STD benefits. Plaintiff cannot prove any causal connection between the fact of his filing a claim for STD benefits in September 2001, and his termination by CDI in December 2001. Nor does Plaintiff attempt to establish that the reasons identified by PTC and Ms. Wales for their actions was a pretext under §510 of ERISA. In fact, Plaintiff's Opposition does not even address Defendants' motion for judgment on Count II, except to acknowledge at footnote 9 that the analysis of Count II is the same as Count I. As set forth in Defendants' memorandum, Plaintiff has absolutely no evidence that PTC or Ms. Wales acted with the specific intent of punishing Plaintiff for filing a claim for STD benefits. That is particularly true where, as here, Ms. Wales took no action to

8

prevent or discourage Plaintiff from submitting his claim for STD benefits in September 2001 and, in fact, assisted him with the processing of the claim. (SOF ¶5.) Moreover, there is no evidence that she in any way attempted to influence or interfere with CIGNA's decision to approve Plaintiff's claim for STD benefits. Plaintiff's failure to oppose Defendant's motion as to Count II, together with the undisputed record evidence discussed at pages 9-12 of Defendants' memorandum, entitle Defendants to judgment on Count II.

### D. Plaintiff's Opposition Fails To Create A Factual Dispute About Whether Ms. Wales or PTC Acted With Actual Malice Sufficient To Defeat Summary Judgment On The Intentional Interference Claim.

Plaintiff's Opposition fails to raise a triable issue on his intentional interference claim. While Plaintiff acknowledges that he must prove that PTC and Ms. Wales knowingly induced a third party to discontinue an advantageous relationship, he completely ignores his own testimony under oath that the entire basis of his claim against Ms. Wales in Count IV is that she was "negligent in the investigation" of his status in December, 2001. (SOF ¶48.) In his opposition, Plaintiff states only in general terms that if his discrimination claims get to the jury, so too should Count IV.

As set forth above, Plaintiff's dearth of evidence of pretext is insufficient to defeat summary judgment on his discrimination claims, and, therefore, Plaintiff cannot defeat summary judgment as to Count IV. See, Brunner v. Stone & Webster Engineering Corp., 413 Mass. 698, 705-06 (1992) (plaintiff's failure to establish discriminatory motive in G.L. c. 151B claim also disposes of claim against supervisor for tortious interference). Plaintiff also claims that Ms. Wales's "perfunctory investigation" establishes personal animosity directed toward him. Plaintiff cites no legal authority for his contention, and completely ignores the controlling authority cited by Defendants (at pages 15-17 of their memorandum) holding that a negligent, sloppy or callous

investigation does not produce an inference of spite or personal hostility. See e.g. Sklar v. Beth Israel Deaconess Medical Center, 59 Mass. App. Ct. 550, 554 (2003). Accordingly, summary judgment should enter in favor of Defendants on Count IV.

### E. Plaintiff's Negligence Claim Fails As a Matter Of Law

Plaintiff's Opposition makes clear that his claim of general negligence fails as a matter of law. Plaintiff still has not identified the duty he claims was owed to him. Rather, he alleges that Defendants owed him a duty of care because of a "special relationship" between the parties. The only support for that contention is the case of Irwin v. Town of Ware, 392 Mass. 745, 756 (1990). However, in Irwin the "special relationship" relied upon was that between a police officer and the general public. Plaintiff cites to nothing that establishes a "special relationship" in this case.

Finally, Defendants reiterate that the O'Connell v. Bank of Boston case makes clear that, in the context of a claim for negligent investigation, the only duty relating to that investigation is owed to the party who commissioned the investigation. To the extent that Plaintiff argues that the investigation by Ms. Wales on behalf of PTC was biased or otherwise insufficient because of an alleged employment relationship, the negligence claim still fails as a matter of law because it is barred by statutory remedies. Indeed, it is well settled that where, as here, Plaintiff has an existing statutory remedy for the alleged discriminatory conduct alleged in his Complaint, Massachusetts courts will not recognize a new duplicative common law cause of action for the same alleged wrong. See Green v. Wyman-Gordon Co., 422 Mass. 551, 558, 664 N.E.2d 808 (1996) ("insofar as the plaintiff's common law claims are merely recast versions of her . . . claims under c. 151B, they are barred by that statute's exclusivity provision"); Melley v. Gillette Corp.,

19 Mass. App. Ct. 511, 512 (1985), *aff'd*, 397 Mass. 1004 (1986).[8] Accordingly, Defendants are entitled to summary judgment on Count V of the Complaint.

## CONCLUSION

For the above reasons, and for the reasons set forth in Defendants' Memorandum of Law in support of their motion for summary judgment, Defendants respectfully request that the Court enter summary judgment their favor on Counts I, II, IV and V of Plaintiff's Complaint, those being the only remaining Counts in this matter.

Respectfully submitted,

PARAMETRIC TECHNOLOGY CORPORATION
and LISA WALES,

By their attorneys,

/s/ Guy P. Tully
Guy P. Tully, BBO #555625
Jackson Lewis LLP
75 Park Plaza
Boston, MA 02116
(617) 367-0025

### CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2006, a copy of the foregoing was served on Plaintiff's counsel by electronic mail and through the ECF system.

/s/ Guy P. Tully

---

[8] Moreover, to the extent Plaintiff maintains that PTC was his employer, the negligence claim fails for the additional reason that it is barred by the exclusivity provision of the Massachusetts Workers' Compensation Act, G.L. c. 152 Sec. 24. It is well settled that section 24 of the Workers' Compensation Act precludes common law actions for both negligence and intentional torts that arise out of and in the course of employment. Doe v. Purity Supreme, Inc., 422 Mass. 563, 565, 664 N.E.2d 815, 818 (1996) (claims for negligence, assault and battery, false imprisonment and negligent and intentional infliction of emotional distress barred by the Act); see also Grant v. John Hancock Mutual Life Insurance Company, 183 F.Supp. 2d 344, 364-365 (D. Mass. 2002) (same). Finally, it is beyond dispute that the Act bars suits for negligence and intentional torts against both an employer and co-workers "if the fellow employee also was acting in the course of employment." Anzalone v. Mass. Bay Transp. Authority, 403 Mass. 119, 124, 526 N.E.2d 246, 249 (1988).