```
                   UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS
```

```
                              )
ALEXEI KOUVCHINOV,            )
     Plaintiff,               )
                              )
          v.                  )     04-CV-12531-MEL
                              )
PARAMETRIC TECHNOLOGY         )
CORPORATION, CDI CORPORATION, )
LISA WALES, and CONNECTICUT   )
GENERAL LIFE INSURANCE CO.,   )
     Defendants.              )
                              )
```

## MEMORANDUM AND ORDER

LASKER, D. J.

      Parametric Technology Corporation ("PTC") and Lisa Wales ("Wales") move for summary judgment against Alexei Kouvchinov ("Kouvchinov") on all four remaining counts of the complaint: (1) Count I is a disability discrimination claim under the Americans with Disabilities Act ("ADA") 42 U.S.C. §§12101 et seq., and M.G.L. c.151B, against PTC; (2) Count II is a §510 ERISA discrimination claim under 29 U.S.C. §1140, against PTC and Wales; (3) Count IV claims intentional interference with an advantageous relationship; and (4) Count V alleges that PTC and Wales were negligent in their investigation of Kouvchinov's status in December 2001. The claims against defendants CDI Corporation ("CDI") and Connecticut General Life Insurance

Company ("CIGNA") were dismissed by earlier stipulations.

Kouvchinov worked at PTC from 1994 until September 2001. On September 10, 2001, PTC notified Kouvchinov that he was being laid off as part of a reduction in force. The effective date of the layoff was September 24, 2001. On September 17, 2001, Kouvchinov filed a claim for short-term disability ("STD") caused by depression. Kouvchinov was deemed eligible and approved for STD benefits by CIGNA through December 16, 2001.

Wales, a PTC human resources employee, saw Kouvchinov on the PTC premises on December 4, 2001 and inquired as to his purpose there. Kouvchinov explained that he was performing repair work for PTC as an employee of CDI. After some inquiry, Wales learned that CIGNA had Kouvchinov classified as disabled with his STD claim approved through December 16, and that his claim had been transferred to CIGNA's long-term disability ("LTD") department.

Wales notified PTC of what she had learned and PTC notified CDI that it would not permit Kouvchinov to work on the PTC project. CDI thereafter terminated Kouvchinov's employment. Kouvchinov filed this action in December 2004.

I.

As to Count I, Defendants contend that Kouvchinov must establish that he: (1) suffers from a disability as defined by the ADA and M.G.L. c.151B; (2) was nevertheless able to perform

the essential functions of his job; and (3) defendants took an adverse employment action against him because of his protected disability.

According to the ADA and M.G.L. c.151B, a person is considered disabled if he "(a) [has] a physical or mental impairment that substantially limits one or more of his major life activities; (b) [has] a record of such an impairment; or (c) [is] regarded as having such an impairment." Defendants argue that Kouvchinov is not disabled within the meaning of the ADA or M.G.L. c.151B because his depression was only of short duration and he admits that there has been no period since September 2001 when he was unable to care for himself or engage in daily life activities by himself.

A disability which substantially limits one or more major life activities, however, is "not a temporary one, the impairment at issue must be a long-term condition." Mulloy v. Acushnet Co., 2005 WL 1528208 at *4 (D. Mass. 2005)(citing Toyota Motor Mfg. Ky., Inc. v. Williams, 534 U.S. 184, 194 (2002)). Because Kouvchinov's depression does not meet the standard for a disability under the ADA or M.G.L. c.151B, defendants argue that he fails to make a prima facie case that PTC could have regarded him as disabled or taken any action based on his depression.

In response, Kouvchinov argues that there is sufficient evidence that he was disabled as of December 2001. Kouvchinov

3

agrees that the ADA and M.G.L. c.151B define a disability as a "physical or mental impairment that substantially limits one or more major life activities," and that to be "substantially limiting" under the ADA, an impairment must be "permanent or long-term." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. at 198.  Kouvchinov contends, however, that "substantially" limiting "may encompass conditions that are 'potentially long-term, in that their duration is indefinite and unknowable." Guzman-Rosario v. United Parcel Serv., Inc., 397 F.3d 6, 10 (1st Cir. 2005).  Kouvchinov notes that he entered treatment with Dr. Freedberg in June 2000 when he presented with a prior history of depression, showing that he had a mental impairment which substantially limited his ability to learn and work over a period of years, and that his return to work in December 2001 did not establish that his impairment had disappeared.  Kouvchinov argues that returning to work is helpful to alleviate the symptoms of depression, although he was not able to learn anything new while at work.

      Kouvchinov also contends that he need show only that discrimination "contributed significantly" to his termination or was a "material and important ingredient in causing it to happen." Cariglia v. Hertz Equipment Rental Corp., 363 F.3d 77, 84 (1st Cir. 2004), and that he is entitled to relief if PTC discriminated against him even if the discrimination was not

intentional. Kouvchinov argues that he need only show that he "was treated disparately 'because of [disability]'...regardless of whether the employer consciously intended to base [its actions] on [disability], or simply did so because of unthinking stereotypes or bias." Thomas v. Eastman Kodak Co., 183 F.3d 38, 58 (1st Cir. 1999).

Kouvchinov does not present a prima facie case for disability discrimination. The parties agree that a disability, as defined by both the ADA and M.G.L. c. 151B, must be "permanent or long term." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. at 198. Kouvchinov cites a case which states that conditions that are "potentially long-term, in that their duration is indefinite and unknowable" may qualify as "substantially limiting." Guzman-Roasrio, 397 F.3d at 10. This case, however, goes on to note that conditions do not qualify if they are "brief or foreseeably temporary." Id. It then cites Soileau v. Guildford of Me., Inc., 105 F.3d 12, 16 (1st Cir. 1997) as an example of "brief or foreseeably temporary" because it involved a five-week leave from work and four-month activity restriction because of a depressive attack. Kouvchinov points to no restriction on his work, nor does he provide any evidence of a substantial limitation on any "major life activity" as a result of his condition.

As to Count II, Defendants contend that Kouvchinov has

failed to establish that the "employment action was taken with the specific intent of interfering with an employee's ERISA benefits." Barbour v. Dynamics Research Corp., 63 F.3d. 32, 37 (1st Cir. 1995). Defendants assert that Kouvchinov cannot show a connection between his September 17, 2001 filing of a claim for STD benefits with PTC and his December 7, 2001 termination from employment by CDI. Kouvchinov merely asserts that he believed Wales did not think he was disabled, and that PTC told CDI he was on long-term disability and that was what led CDI to terminate him. Defendants contend that Wales was not involved in CDI's decision to terminate Kouvchinov - she never communicated with CDI about his disability claim, nor did she recommend any course of action to CDI or possess the power to make any such employment decision. PTC has stated that it requested Kouvchinov's removal from the PTC project because it thought Kouvchinov was representing himself to CIGNA as being disabled while simultaneously representing himself to CDI and PTC as being physically capable of working.

A prima facie case of discrimination under ERISA §510 requires that Kouvchinov establish: (1) that he participated in a statutorily protected activity; (2) that an adverse employment action was taken against him; and (3) that a causal connection existed between the two. Vergato v. Piantedosi Baking Co., Inc., 1996 WL 208478 at *2-3 (D. Mass. 1996). There is simply no

evidence to support a finding that PTC and Wales acted to interfere with Kouvchinov's ERISA benefits by having him CDI terminate him.

However, even if Kouvchinov could be said to have stated a prima facie case of discrimination under Counts I and II, there is no evidence that Defendants' reasons for demanding Kouvchinov's removal from the PTC project were pretextual. PTC and Wales have satisfied their burdens of articulating non-discriminatory reasons for Kouvchinov's removal from the PTC premises. They believed Kouvchinov was violating business ethics by collecting disability benefits from CIGNA while representing to CDI that he was able to work. PTC acted only after it received confirmation from CIGNA that Kouvchinov was still collecting STD benefits and was approved through December 16, 2001, and was in the process of being referred to the LTD group. Even then, PTC only told CDI that Kouvchinov's services were no longer needed; it did not tell CDI anything more.

In short, there is no evidence that the rationale offered by PTC and Wales is a pretext for discrimination. In assessing whether PTC's reason is a pretext, the court's "focus must be on the perception of the decisionmaker." Mesnick v. General Electric Co., 950 F.2d 816, 824 (1st Cir. 1991). The leap required to infer discriminatory animus leading to Kouvchinov's termination by CDI is simply not supported by the

evidence.

## II.

As to Count IV, Defendants contend that there is no evidence that PTC or Wales engaged in conduct that amounted to intentional interference or which was carried out improper means or motive which rose to the level of actual malice. Kouvchinov testified that he considered Wales to be "negligent in the investigation" of his disability status in December 2001. Negligent conduct, however, does not constitute intentional conduct and certainly not conduct undertaken with improper motive or means. As to PTC, Kouvchinov alleges only that PTC provided false information to CDI but does not provide any evidence that it acted actual malice or improper motive.

Kouvchinov responds that there is evidence that Wales acted with actual malice and that PTC, acting through its agent Wales, induced CDI to terminate him. Kouvchinov asserts that Wales's abnormally short investigation which was not in line with PTC's "normal management procedures" is evidence of personal animus against him. Wales testified that she knew Kouvchinov had not received any disability benefits for any period after November 30, 2001, but that she did not inform the decisionmaker at PTC. Kouvchinov points to Wales's allegation which she knew to be false as clear evidence of actual malice. In sum, Kouvchinov claims that Wales therefore intentionally interfered

with Kouvchinov's relationship with PTC and CDI and induced CDI to terminate Kouvchinov.

In order to prove intentional interference with an advantageous relationship, a plaintiff must establish: (1) an advantageous employment relationship; (2) that the defendant knowingly induced the employer to break that relationship; (3) that the defendant's interference was both intentional and done with improper means or motive; and (4) that he was harmed by the defendant's actions.  See Sklar v. Beth Israel Deaconess Medical Center, 59 Mass. App. Ct. 550, 554 (2003).

Kouvchinov presents no evidence of intentional interference done by improper motive or means, or any actual malice, on the part of either PTC or Wales.  His argument that Wales and PTC induced CDI to terminate him does not give rise to any indication that they were motivated by improper motive or means - it is not disputed that CIGNA reported Kouvchinov as receiving disability benefits through December 16, 2001, and PTC and Wales were not unreasonable to believe Kouvchinov was "double dipping."  PTC and Wales acted reasonably given the information they had and Kouvchinov presents no evidence to indicate that PTC and/or Wales, through their actions, induced CDI to terminate him.

III.

Kouvchinov's negligence claim (Count V) is based on

Wales's failure to ask him whether he reported his return to work to CIGNA. Kouvchinov asserts that Wales and PTC owed him a duty of care to the extent that they had a "special relationship." Irwin v. Town of Ware, 392 Mass. 745, 756 (1984), and that the defendants could reasonably foresee that they were expected to "take affirmative action to protect [him] and could anticipate harm to [him] from the failure to do so." Id.

Defendants argue that Wales went directly to CIGNA for information and CIGNA informed PTC that Kouvchinov was still classified as disabled and was approved through December 16, 2001. There was no failure on the part of PTC or Wales to discover any information because CIGNA has no record of receiving the alleged telephone call from Kouvchinov advising them of his return to work on November 29, 2001.

Kouvchinov fails to allege with any particularity the legal or factual basis for his claim that PTC and Wales owed him a duty of reasonable care in connection with his employment. In Massachusetts, the "investigator's duty runs to the person or entity on whose behalf the investigation is conducted, not to the person being investigated." O'Connell v. Bank of Boston, 37 Mass. App. Ct. 416, 419 (1994). Kouvchinov fails to present any evidence that a special relationship existed between him and PTC and/or Wales which entitled Kouvchinov to specific affirmative action by the Defendants. They acted reasonably based on the

results of the investigation and did not violate any duty to Kouvchinov.

      *    *    *

Accordingly, Defendants' motion for summary judgment is GRANTED.

It is so ordered.


Dated:  July 31, 2007
     Boston, Massachusetts   /s/ Morris E. Lasker
                      U.S.D.J.